(775 P.2d 183)

No. 62,119

STATE OF KANSAS, *Appellee,* v. LAUFRANZE KEOKA JONES, *Appellant.*

Opinion filed May 26, 1989.

*Paul Flake,* student intern, *Lucille Marino,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, for the appellant.

*James Savage,* assistant district attorney, *Nick A. Tomasic,* district attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before DAVIS, P.J., LEWIS, J., and TERRY L. BULLOCK, District Judge, assigned.

DAVIS, J.: The defendant, Laufranze Keoka Jones, was charged

with two counts of welfare fraud (K.S.A. 39-720), one count of making a false writing (K.S.A. 21-3711), and one count of theft (K.S.A. 21-3701). The charges are based upon the State's contention that defendant had obtained benefits to which she was not entitled by falsely representing that her teenage son was living with her when, in fact, he was living with his grandmother. Following a jury trial, the defendant was convicted on all four counts and sentenced to four concurrent terms of one to five years' imprisonment. She raises the following issues on appeal: (1) Whether the statute of limitations barred prosecution on the welfare fraud and theft charge; (2) whether defendant was denied due process by being convicted of theft when she had been charged with welfare fraud; (3) whether defendant was denied her right to cross-examine prosecution witnesses; and (4) whether defendant's convictions are supported by the evidence. We vacate defendant's conviction of welfare fraud in Count I because it was barred by the statute of limitations, reverse and remand on Count II based upon a denial of due process, and affirm on the remaining convictions.

Two types of welfare benefits are involved in this case. The first type is "public assistance" which includes food stamps, medical benefits, and aid to dependent children cash funds. Cash benefits are paid by monthly checks from the Kansas Department of Social and Rehabilitation Services (SRS) mailed to the recipient from Topeka. Defendant received a total of $5,221 in public assistance benefits from July 1, 1982, through March 31, 1983. Defendant's alleged wrongful receipt of these benefits constitutes Count I. Defendant also received $10,342 in the form of public assistance benefits from December 1, 1983, through December 31, 1985. Defendant's alleged wrongful receipt of these benefits constitutes Count II. Counts I and II each charged defendant with violations of K.S.A. 39-720 (the welfare fraud statute).

The second type of benefit involved is "Section 8" rental assistance payments. These are paid by the United States Department of Housing and Urban Development (HUD) through a local housing authority, in this case, the Kansas City, Kansas, Housing Authority, to the tenant's landlord. Count III charges defendant with receiving these benefits in violation of K.S.A. 21-3711 (making a false writing). Count IV charges defendant

with receiving the "Section 8" rental assistance payments in violation of K.S.A. 21-3701 (theft). The additional facts necessary to resolve the issues in this case are set forth below.

## Statute of Limitations

Count I of the amended information charges that an offense was committed between July 1, 1982, and March 31, 1983. Count II charges that an offense was committed between December 1, 1983, and December 31, 1985. Count IV, which is a theft charge, charges that an offense was committed between November 1, 1983, and September 10, 1986. A prosecution for any one of these three offenses must be commenced within two years after the offense is committed. K.S.A. 21-3106(3). In this case, the prosecution commenced when the original information was filed on September 10, 1986. Part of the offenses charged in Counts II and IV and the entire part of the offense charged in Count I were committed more than two years prior to the commencement of the prosecution. This, the defendant argues, bars prosecution of these three counts.

At trial and upon appeal, the State argues that the statute of limitations was tolled because the defendant concealed her crimes. K.S.A. 21-3106(4) provides that "the period within which a prosecution must be commenced shall not include any period in which: . . . (c) the fact of the crime is concealed." The State argues that this "exception" is applicable because defendant, after making her initial applications for benefits, continued to represent on her monthly reporting forms and during her subsequent reviews that her son resided with her. Defendant argues that this is not concealment because she did nothing to hide her initial fraud, she merely repeated it.

We need not resolve this contention, for we conclude that the State is foreclosed from relying upon concealment because it failed to include allegations of concealment in the information charging the offenses. Failure to allege concealment in the information bars the State from relying on concealment as an exception to the statute of limitations. *State v. Schonenberger,* 173 Kan. 665, 669, 250 P.2d 777 (1952); see also Annot., "Necessity of Alleging in Indictment or Information Limitation-Tolling Facts," 52 A.L.R.3d 922 (majority of jurisdictions consider it necessary). Even though the defendant did not raise this argument below, a defect in the complaint "shall be noticed by the

court at any time during the pendency of the proceeding." *State v. Rasch*, 243 Kan. 495, Syl. ¶ 2, 758 P.2d 214 (1988).

Although the State may not rely on concealment if, as it contends, the nature of the crimes charged are continuing offenses, the question of whether the statute of limitations bars prosecution must still be addressed. K.S.A. 21-3106(5) provides that "[a]n offense is committed either when every element occurs, or, if a legislative purpose to prohibit a continuing offense plainly appears, at the time when the course of conduct or the defendant's complicity therein is terminated. Time starts to run on the day after the offense is committed."

*State v. Gainer*, 227 Kan. 670, 608 P.2d 968 (1980), interprets K.S.A. 21-3106(5). In *Gainer*, the defendant stole guns from a neighbor's attic and his theft was not discovered for some time. In order to avoid the statute of limitations, the State argued that the theft was a "continuing offense" since defendant had retained possession of the stolen guns. 227 Kan. at 671. The Supreme Court rejected this "rather inventive theory," explaining:

"The concept of continuing offenses is essentially a legal fiction. Fictions are usually avoided in the criminal law. [Citation omitted.] The courts have taken a very limited view of those crimes which constitute continuing offenses." 227 Kan. at 672.

In its analysis, *Gainer* adopted the rule announced by the U.S. Supreme Court in *Toussie v. United States*, 397 U.S. 112, 25 L. Ed. 2d 156, 90 S. Ct. 858 (1970):

"These principles indicate that the doctrine of continuing offenses should be applied in only limited circumstances since, as the Court of Appeals correctly observed in this case, '[t]he tension between the purpose of a statute of limitations and the continuing offense doctrine is apparent; the latter, for all practical purposes, extends the statute beyond its stated term.' 410 F.2d at 1158. These considerations do not mean that a particular offense should never be construed as a continuing one. They do, however, require that such a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." 227 Kan. at 672 (quoting 397 U.S. at 115).

In rejecting the State's argument, *Gainer* concluded:

"To constitute a continuing offense it must plainly appear in the statute defining such offense that there is a clear legislative purpose to make the prohibited course of conduct a continuing offense." 227 Kan. at 673.

Defendant argues that no legislative intent appears to make

welfare fraud (K.S.A. 39-720) or theft (K.S.A. 21-3701) a continuing offense. The difference between *Gainer* and the three charges we deal with is readily apparent. Unlike the theft in *Gainer*, which involved a single taking of another's property, welfare fraud in Counts I and II and the theft of public assistance benefits in Count IV involve the wrongful taking of benefits on a monthly basis over a period of time.

The view that welfare fraud and theft of public assistance benefits over an extended time is a continuing offense has been followed in the few states where the question has arisen. In *John v. State*, 96 Wis. 2d 183, 291 N.W.2d 502 (1980), defendant received aid to families with dependent children from March 1969 through June 1977. She stated in her initial application and in her semiannual review forms that she had four children living with her. The complaint and information alleged, however, that defendant's daughter had, in fact, been living with her grandmother outside of defendant's household since 1970. 96 Wis. 2d at 185-86.

The defendant was convicted and her argument on appeal was similar to that which the defendant presents to us. In the words of the Wisconsin court:

"The defendant argues that her failure to report a change in the status of her household was a completed crime in 1970. If this is so, the six year statute of limitations for felony prosecutions would act as a bar to the prosecution of this case in 1978. She reasons that when her daughter moved out of her household, it became her duty to report that fact as a change of circumstances within seven days thereafter. At the expiration of the statutory grace period, all the elements of the offense occurred simultaneously and the statute of limitations commenced on that date. Her crime, it is argued, like the majority of criminal activity, was instantaneous." 96 Wis. 2d at 187-88.

After discussing the rule previously quoted from *Toussie*, 397 U.S. 112, and the wording of the Wisconsin statute, the Wisconsin court concluded:

"[T]he crime of failing to report a change in family conditions to the public assistance authorities is one which by its very nature, involves a continuing course of conduct. The objective of one failing to report changed conditions is to continue to receive over time benefits for which the recipient is not entitled. . . . In addition, the welfare laws depend heavily on voluntary compliance with the reporting requirements incorporated therein. Absent an effective means of ensuring voluntary compliance, those responsible for administering welfare benefits are severely handicapped in assuring that only those eligible receive benefits and that abuses are kept to a minimum. It is therefore in the nature of the

crime itself that the failure to report changes in family conditions prevents prompt discovery by the authorities." 96 Wis. 2d at 193.

The court therefore concluded that both the wording of the Wisconsin statute and the nature of the offense itself showed that the Wisconsin legislature intended to make welfare fraud a continuing offense. 96 Wis. 2d at 194.

Similarly, in *State v. Tyson*, 200 N.J. Super. 137, 490 A.2d 386 (1984),

"[t]he defendant received numerous monthly overpayments during the entire period from 1974 until 1983. The defendant, while obtaining and cashing each monthly check, and executing numerous reeligibility forms, breached her duty to report the changes in circumstances during that time. This clearly indicates the pursuit of a common scheme." 200 N.J. Super. at 151.

The court therefore concluded that her offense was a continuous offense and that the statute of limitations did not bar her prosecution. 200 N.J. Super. at 151.

Finally, in *People v. Keehley*, 193 Cal. App. 3d 1381, 239 Cal. Rptr. 5 (1987), the defendant received benefits for herself and her children from 1979 through 1983 after she falsely represented that she was not receiving any social security benefits. Defendant repeated her misrepresentations on her annual review forms and on her monthly income report forms. 193 Cal. App. 3d at 1384. On appeal, defendant argued that her prosecution was barred by the three-year statute of limitations. The court of appeals concluded that welfare fraud was a continuing offense:

"Our conclusion that welfare fraud as practiced in this case is a continuing offense is a two-edged sword. Although it precludes the prosecutor from charging multiple counts where the defendant has pursued a single course of conduct, it also prevents the defendant from invoking the bar of the statute of limitations as long as the *completion* of the course of conduct lies within the statutory period. . . . Here, because it is undisputed Keehley's course of fraudulent conduct was not completed before June 1983, the information filed in April 1985 was timely." 193 Cal. App. 3d at 1386.

Our consideration of the above authority and Kansas law leads us to the same conclusion. We hold that the offenses charged in Counts I, II, and IV are continuing offenses. We recognize that defendant in Count IV is charged with theft, but under the circumstances, the nature of the charge is continuing. Thus, the statute of limitations does not bar the prosecution of Counts II and IV since the course of conduct alleged was not completed

prior to the two years before commencement of the case. However, the same is not true for Count I. Count I was completed as a continuing offense in 1983 but was not charged by the State until 1986, beyond the two-year statute of limitations. Thus, the defendant's Count I conviction must be vacated.

## Due Process

The defendant argues that she was charged in Counts I and II with welfare fraud but that the jury convicted her according to the court's instruction on theft. She therefore asserts that her convictions on these counts violate her due process rights. We agree.

Counts I and II clearly charge the offense of welfare fraud even though each charge makes reference to the theft statute, K.S.A. 21-3701. The information fails to incorporate an essential element of theft—intent to permanently deprive—and sustaining a conviction of theft where the information charges welfare fraud is violative of defendant's due process rights.

In *State v. Chatmon,* 234 Kan. 197, 671 P.2d 531 (1983), the Supreme Court stated:

"A conviction upon a charge not made in the information or properly brought before the court is a clear denial of due process under the Fourteenth Amendment to the Constitution of the United States. In a criminal action the trial court must not only have jurisdiction over the offense charged, but it must also have jurisdiction of the question which its judgment assumes to decide. *State v. Minor,* 197 Kan. 296, Syl. ¶ 4, 416 P.2d 724 (1966). A judgment for the offense of battery where the court is without jurisdiction to decide the issue is void. 234 Kan. at 205."

Not unlike *Chatmon,* the trial court allowed the jury to consider the defendant's guilt of crimes not charged by the State. The information is a jurisdictional instrument upon which the accused stands trial. Here, the court had jurisdiction over the offenses of welfare fraud in Counts I and II, but it had no jurisdiction over theft in Counts I and II—the question which the jury's judgment assumed to decide. Having no jurisdiction over the offense of theft in Counts I and II, the trial court had no power to pronounce the sentences imposed for theft in Counts I and II.

The theft instructions of the court in Count I and II and the judgments of conviction were in accordance with then existing law. At the time of defendant's convictions, welfare fraud was considered to be a form of theft. See *State v. Bryan,* 12 Kan. App.

2d 206, 738 P.2d 463, *rev. denied* 241 Kan. 839 (1987), overruled by *State v. Micheaux*, 242 Kan. 192, 747 P.2d 784 (1987). *Micheaux*, however, establishes that welfare fraud is a separate offense. Defendant was charged in Counts I and II with welfare fraud and convicted of theft. Having already vacated the conviction in Count I, we now reverse defendant's conviction on Count II and remand.

## Cross-Examination

James Savage, who prosecuted this case, is an attorney for SRS. He prosecutes welfare fraud cases in Wyandotte County under an appointment as a special assistant district attorney. Defendant's trial counsel questioned the propriety of this arrangement and sought to show that because of Savage's position with SRS, the SRS witnesses might shade their testimony to obtain his approval. The State filed a motion in limine to prevent defendant from referring to Savage's status as a special prosecutor. The trial court granted this motion, stating: "I'll direct counsel to refrain from bringing out in any way any evidence about his prime employer or office location."

Defendant now argues that the Confrontation Clause of the Sixth Amendment guaranteed her the right to cross-examine the SRS witnesses about their "potentially great" bias, interest, or prejudice stemming from the fact that the prosecutor was also an SRS employee.

"The admissibility of evidence is largely within the discretion of the trial judge." *Williams v. Union Pacific Railroad Co.*, 204 Kan. 772, 780, 465 P.2d 975 (1970). Evidence that is irrelevant or immaterial is properly excluded. And a trial judge has discretion to exclude even relevant evidence if "its probative value is substantially outweighed by its prejudicial nature." *Van Hoozer v. Farmers Insurance Exchange*, 219 Kan. 595, Syl. ¶ 11, 549 P.2d 1354 (1976); K.S.A. 60-445. The fact that the prosecutor and the SRS witnesses are employed by the same state agency and work in the same building is immaterial absent a specific allegation of collusion, contrived evidence, or other impropriety. Defendant admitted that she had no such evidence. The court properly excluded this evidence.

## Sufficiency of Evidence

Defendant argues that her convictions for theft by deception (Count IV) and making a false writing (Count III) must be

reversed because the State failed to prove that her misrepresentations as to where her son resided were "willfully false." Specifically, she argues that her son's presence at his grandmother's house was merely part of a "child-care" arrangement and that she did not realize that such a "child-care" arrangement prevented her son from being part of her household.

Our standard of review is clear:

"In a criminal action, when the defendant challenges the sufficiency of the evidence to support a conviction, the standard of review on appeal is whether the evidence, viewed in the light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. The appellate court looks only to the evidence in favor of the verdict to determine if the essential elements of the charge are sustained." *State v. Dunn*, 243 Kan. 414, 429, 758 P.2d 718 (1988).

K.S.A. 21-3201(2) defines the terms "willful conduct" and "willful" as follows:

"Willful conduct is conduct that is purposeful and intentional and not accidental. As used in this code, the terms 'knowing,' 'intentional,' 'purposeful,' and 'on purpose,' are included within the term 'willful.'"

Thus, a statement is willfully false if a person intentionally makes a statement that he or she knows is not true. It is undisputed that defendant made statements to the Kansas City Housing Authority that her son resided with her. There was ample evidence that this was not true.

As to whether defendant made these statements knowing that they were false, if the evidence were as defendant suggests—that her son merely spent time before and after school together with some nights with his grandmother—defendant's arguments that she thought her son was a member of her "household" under housing authority regulations might have some merit. However, as defendant has acknowledged, the evidence must be viewed most favorably to the prosecution, and that evidence shows that defendant's son had resided full-time with his grandmother since at least 1982. Under no reasonable definition of "household" could defendant's son be considered a member of her "household."

The evidence shows that this was not an instance of an innocent mistake or a simple misunderstanding of eligibility requirements. Viewed in the light most favorable to the prosecution, the evidence convinces us that a rational factfinder could have found defendant guilty beyond a reasonable doubt.

Conviction on Count I is vacated; conviction on Count II is reversed and case remanded; convictions on Counts III and IV are affirmed.