(24 P.3d 155)

No. 85,583

CITY OF LIBERAL, KANSAS, *Appellant,* v. JUAN VARGAS, *Appellee.*

Opinion filed April 13, 2001.

*Kevin D. Weakley,* of Sharp, McQueen, McKinley, Dreiling & Tate, P.A., of Liberal, for appellant.

*Peter G. Olson,* of Brooks, Allen & Olson, of Liberal, for appellee.

Before PIERRON, P.J., MARQUARDT, J., and BUCHELE, S.J.

MARQUARDT, J.: The City of Liberal (City) appeals the district court's ruling that Juan Vargas did not commit the crime of identity theft. We affirm.

In February 2000, Officer Rogers was on duty and noticed a car being driven without a tag light. Officer Rogers stopped the vehicle and asked the driver for his driver's license and proof of insurance. The driver produced Missouri and National Beef Packing Company (National Beef) identification cards bearing the name of Guillermo Hernandez. Officer Rogers ran the name through a regional system. The system produced five identical matches in other states.

The driver admitted that his name was Juan Vargas. He later confessed that he was not authorized to work in the United States and that he had bought papers identifying himself as Guillermo Hernandez so that he could obtain employment at National Beef. Vargas pled guilty in municipal court to one count of identity theft, one count of no seat belt, one count of no tag light, and one count of no driver's license. Vargas appealed the municipal court's decision to the district court.

The district court convicted Vargas of one count of no tag light, one count of no seat belt, and one count of no driver's license. Vargas was acquitted on the count of identity theft. The district

court held that the City failed to meet its burden to show fraud in the use of the false identity card. The City appeals.

We note at the outset a jurisdictional peculiarity. Vargas pled guilty in the municipal court, yet he appealed the merits of his case to the district court. However, the prohibition against appeals provided for in K.S.A. 22-3602(a) does not apply to pleas accepted by a judge of a Kansas municipal court. See *City of Dodge City v. Frey*, 26 Kan. App. 2d 559, 560, 990 P.2d 1240 (1999). Therefore, this court does have jurisdiction to consider this issue.

The City asks this court to determine whether Vargas' use of a false identification to secure employment and receive the economic benefit of a salary is tantamount to defrauding another person.

Interpretation of a statute is a question of law, and this court's review is unlimited. See *State v. Patterson*, 25 Kan. App. 2d 245, 247, 963 P.2d 436, *rev. denied* 265 Kan. 888 (1998).

"Identity theft is knowingly and with intent to defraud for economic benefit, obtaining, possessing, transferring, using or attempting to obtain, possess, transfer or use, one or more identification documents or personal identification number of another person other than that issued lawfully for the use of the possessor." K.S.A. 2000 Supp. 21-4018(a).

" 'Intent to defraud' means an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property." K.S.A. 21-3110(9).

It is a fundamental rule of statutory construction that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. *In re Marriage of Killman*, 264 Kan. 33, 42, 955 P.2d 1228 (1998).

Without state or federal cases to guide our inquiry, we turn to the legislative history of K.S.A. 2000 Supp. 21-4018.

The crime of identity theft was created by the 1998 Kansas Legislature. See L. 1998, ch. 179, § 1. Representative Bonnie Sharp, a proponent of the legislation, believed it was necessary to criminalize identity theft. She cited the example of a person's social security number being used by another to obtain an illegal checking account and/or a credit card. Representative Sharp stated that the

citizens of Kansas should be protected from "this potentially devastating crime." Minutes of the House Committee on Federal and State Affairs, February 12, 1998, p. 1.

Kyle Smith, an assistant attorney general for the Kansas Bureau of Investigation, testified on behalf of the bill. Smith was concerned that the "surreptitious acquisition of information done with the intent to defraud" was not illegal at the time the bill was proposed. Smith cited the examples of a motel clerk selling a credit card number or a "trasher" obtaining a social security number, which would allow an individual to access other information, leading to theft. Minutes of the House Committee on Federal and State Affairs, February 12, 1998, p. 1.

The committee also heard testimony from Dave Schroeder, a special agent from the Kansas Bureau of Investigation. Agent Schroeder defined identity theft as "[a]cquiring someone's personal identifying information in an effort to impersonate them or commit various criminal acts in that person's name." Agent Schroeder went on to state that individuals who are armed with a stolen identity can commit numerous forms of fraud. Agent Schroeder was specifically concerned about the theft of personal information such as social security numbers; birth certificates; passports; driver's licenses; dates of birth; addresses; telephone numbers; family history information; credit or bank card numbers; and personal identification numbers. Minutes of the House Committee on Federal and State Affairs, February 12, 1998, Attachment Three, p. 2.

K.S.A. 2000 Supp. 21-4018 requires that a defendant obtain, possess, transfer, use, or attempt to obtain the identification documents or personal identification numbers of another. This would occur, for example, when a defendant "took" another person's social security number and used that number when applying for a credit card or bank account.

In the case currently before the court, Vargas admitted that he bought the identification. The record on appeal reflects that Vargas obtained a Missouri identification card as well as a social security card. However, there is no evidence that Guillermo Hernandez is a real person who had his identity "stolen."

It appears from the committee minutes that the legislature passed K.S.A. 2000 Supp. 21-4018 in order to protect individuals who have their identity stolen. The testimony is replete with references to individuals who have been defrauded by perpetrators who misappropriate personal information such as a social security or bank account number. There was no mention of any intent by the legislature to protect a third party from identity theft.

We do not believe that the legislature intended to criminalize the act of which Vargas is now accused. Vargas lied to his employer and obtained employment through false means. There are other appropriate remedies for a situation such as this. Vargas was terminated from his employment. There may also be federal immigration laws which apply. However, we do not believe that K.S.A. 2000 Supp. 21-4018 is applicable to the situation currently before the court.

However, even if K.S.A. 2000 Supp. 21-4018 did apply to the facts of this case, we do not believe that Vargas could be found guilty. The statute requires an "intent to defraud." Vargas admitted that he intended to use a false identity only to work at National Beef. There is no evidence in the record on appeal that Vargas intended to defraud National Beef by stealing money or by being compensated for services not actually rendered.

In addition, we fail to see how Vargas received the economic benefit mentioned in K.S.A. 2000 Supp. 21-4018. Vargas was paid for the time he worked. Vargas' work product was rated as satisfactory. In fact, the record on appeal indicates that National Beef would rehire Vargas in the future.

The City's main argument is that National Beef relied upon Vargas' statement that he was Guillermo Hernandez when it hired him. Essentially, the City claims that National Beef would not have hired Vargas had it known of his status as an illegal alien. This fact is not borne out in the record on appeal. The personnel director for National Beef testified that he had a "responsibility" to refrain from hiring undocumented workers. However, there is nothing in the record on appeal which would indicate that National Beef was in any way defrauded by Vargas' actions.

Vargas did not steal Guillermo Hernandez's identity in order to commit a theft. He bought identification under a false name so that he could work in this state. There is no evidence that Vargas intentionally defrauded anyone in order to receive a monetary benefit. In addition, Vargas was appropriately paid for services rendered. The district court correctly interpreted K.S.A. 2000 Supp. 21-4018 when it reversed Vargas' conviction of identity theft.

Affirmed.