No. 2--05--0458          Filed:  5-9-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) ) | No. 03--CF--3689 |
| MARIA D. MONTOYA, | ) ) ) | Honorable Rosemary Collins, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BOWMAN delivered the opinion of the court:

Following a stipulated bench trial, defendant, Maria D. Montoya, was convicted of two counts of identity theft (720 ILCS 5/16G--15(a)(1) (West Supp. 2003)).  The trial court sentenced defendant to 30 months' probation and 100 hours of public service work and imposed a $500 fine. On appeal, defendant argues that: (1) the evidence is insufficient to sustain her convictions of identity theft, and (2) she is entitled to a $5 credit against her fine.  We affirm defendant's convictions but modify the sentencing order to reflect the $5 credit.

I. BACKGROUND

On February 18, 2004, defendant was indicted on two counts of identity theft.  Count I alleged that "between February of 2000 and December of 2003 *** defendant knowingly used personal identifying information of Mona L. Cantu, by using the social security number of Mona Cantu, to fraudulently obtain money exceeding $10,000 and not exceeding $100,000."  Count II

alleged that "between December of 2002 and August of 2003 *** defendant knowingly used personal identifying information of Mona L. Cantu, by using the social security number of Mona Cantu, to fraudulently obtain services exceeding $10,000 and not exceeding $100,000." The charges arose after defendant, an undocumented immigrant, purchased a social security card bearing Cantu's social security number and used it to obtain a job. A stipulated bench trial commenced on March 1, 2005, at which the following evidence was adduced.

Defendant applied to work for Terra Harvest Foods using Cantu's name and social security number. From February 2000 to December 2003, defendant received $53,702.57 in wages at Terra Harvest under the name and social security number of Cantu. As part of her employment package, defendant was issued health insurance from Blue Cross Blue Shield of Illinois (Blue Cross), also under Cantu's name and social security number. Between December 2002 and August 2003, defendant received medical services at Swedish American Hospital that involved the delivery of her baby. The medical services totaled approximately $31,000.

Defendant arranged for the Blue Cross statements to be mailed to her own address, and she paid the medical and insurance bills. However, when Cantu changed her mailing address, defendant's bills began arriving at Cantu's home. After receiving several bills that involved a hospital stay and medical testing, Cantu questioned Blue Cross about these charges. From this inquiry, Cantu learned that someone was using her name and social security number to obtain insurance through Terra Harvest Foods.

Cantu reported these findings to the Loves Park police department. The police conducted a follow-up investigation and learned that defendant was earning wages and receiving benefits at Terra Harvest Foods under Cantu's name. When the police brought a photograph of Cantu to Terra

Harvest Foods, defendant's supervisor stated that the woman in the photograph was not the person he knew as "Mona Cantu."

The Loves Park police interviewed defendant on December 22, 2003. Initially, defendant identified herself as Mona Cantu. The police asked for her mother's maiden name, and defendant did not answer this question. Defendant told the police she was using someone else's "card." Defendant was then transported to the police station, where she gave a statement explaining the circumstances by which she obtained Cantu's social security number. According to defendant, she drove to Chicago with a person named Sylvia, who loaned her $100 and obtained the social security card for defendant. In her statement, defendant admitted using Cantu's name and social security number to obtain a job. Defendant also stated that she did not use the social security number anywhere else. There was no evidence that defendant knew that Cantu was a real person.

On April 8, 2005, defendant was convicted of two counts of identity theft. On May 9, 2005, defendant filed a motion for a new trial, which the trial court denied.

At defendant's sentencing hearing on May 9, 2005, the State presented evidence of the financial difficulty that defendant's actions had caused Cantu. First, the Illinois Department of Employment Services attempted to recollect unemployment benefits that had been provided to Cantu based on defendant's employment at Terra Harvest Foods. Second, the State of Illinois withheld Cantu's state tax refund because it believed that Cantu was working at defendant's job and not paying taxes. Third, the federal government withheld a portion of Cantu's federal tax refund based on defendant's employment. Last, Cantu was forced to dispute various medical charges that defendant had incurred. Defendant was sentenced to 30 months' probation and 100 hours of public service work and was fined $500. Defendant timely appealed.

## II. ANALYSIS

### A. Identity Theft

Defendant first argues that her actions did not constitute identity theft. Specifically, she argues that she did not "fraudulently obtain" money and services when she used Cantu's name and social security number to obtain a job, because she earned her wages and the insurance benefits were part of her employment package. In reviewing a challenge to the sufficiency of the evidence, we determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Collins, 214 Ill. 2d 206, 217 (2005). In this case, because the facts are not in dispute, defendant's guilt is a question of law, which we review de novo. See People v. Smith, 191 Ill. 2d 408, 411 (2000).

We begin by setting forth the relevant provisions of the Identity Theft Law (720 ILCS 5/16G--1 et seq. (West Supp. 2003)), which was enacted in 1999. The legislative declaration for the Identity Theft Law provides as follows:

"(a) It is the public policy of this State that the substantial burden placed upon the economy of this State as a result of the rising incidence of identity theft and the negative effect of this crime on the People of this State and its victims is a matter of grave concern to the People of this State who have the right to be protected in their health, safety, and welfare from the effects of this crime, and therefore identity theft shall be identified and dealt with swiftly and appropriately considering the onerous nature of the crime." 720 ILCS 5/16G-- 5(a) (West Supp. 2003).

Under section 16G--15(a)(1), "[a] person commits the offense of identity theft when he or she knowingly: (1) uses any personal identifying information or personal identification document of another person to fraudulently obtain credit, money, goods, services, or other property." 720 ILCS 5/16G--15(a)(1) (West Supp. 2003). Section 16G--25 then states that "[i]t is no defense to a charge of *** identity theft that the offender has an interest in the credit, money, goods, services, or other property." 720 ILCS 5/16G--25 (West Supp. 2003).

We are asked to construe the phrase "fraudulently obtain" as used in the statute. "Because the construction of a statute is a question of law, the standard of review is de novo." Collins, 214 Ill. 2d at 214. The principal rule of statutory construction is to give effect to the legislature's intent. People v. Grever, 222 Ill. 2d 321, 328 (2006). The language of the statute is the best indication of the legislative intent. Grever, 222 Ill. 2d at 328. To ascertain the legislature's intent, we may also consider the purpose and necessity for the law, the evils sought to be remedied, and the goals to be achieved. Collins, 214 Ill. 2d at 214. Furthermore, we should evaluate a statutory provision as a whole rather than read phrases in isolation. People v. Glisson, 202 Ill. 2d 499, 505 (2002). When the language is plain and unambiguous, we must apply the statute without resorting to further aids of statutory construction. Collins, 214 Ill. 2d at 214.

The statute does not define fraud, and this is a case of first impression. "In the absence of a statutory definition indicating legislative intent, an undefined term must be given its ordinary and popularly understood meaning." In re Ryan B., 212 Ill. 2d 226, 232 (2004). Also, "[a] term of well-known legal significance can be presumed to have that meaning in a statute." Advincula v. United Blood Services, 176 Ill. 2d 1, 17 (1996). "Fraud" is defined as a "knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment." Black's Law

Dictionary 670 (7th ed. 1999); see also Webster's Third New International Dictionary 904 (1986) (defining "fraud" as "an instance or an act of trickery or deceit esp[ecially] when involving misrepresentation: an act of deluding"). "Fraudulent" means "belonging to or characterized by fraud [or] *** obtained or performed by fraud." Webster's Third New International Dictionary 904 (1986).

In this case, defendant does not contest that she obtained money in the form of wages and services in the form of insurance benefits. Rather, defendant contends that she did not "fraudulently obtain" money or services, because she earned her wages and the insurance benefits were part of her employment package. In other words, there is no evidence that she intended to defraud Terra Harvest Foods by stealing money or by being compensated for services not actually rendered. Defendant relies on City of Liberal v. Vargas, 28 Kan. App. 2d 867, 24 P.3d 155 (2001), to support her argument. See People v. Cumbee, 366 Ill. App. 3d 476, 492 (2006) (with an issue of first impression, it is instructive to consider other states' treatment of the issue).

In Vargas, the defendant admitted that he was not authorized to work in the United States and that he had bought a social security card under someone else's name so that he could obtain employment. Vargas, 28 Kan. App. 2d at 867, 869, 24 P.2d at 156, 157. The defendant was charged with identity theft, which under the Kansas statute "is knowingly and with intent to defraud for economic benefit, obtaining, possessing, transferring, using or attempting to obtain, possess, transfer or use, one or more identification documents or personal identification number of another person other than that issued lawfully for the use of the possessor." Vargas, 28 Kan. App. 2d at 868, 24 P.3d at 156. In reviewing the legislative history of the statute, the court noted that the statute was intended to protect individuals who had had their identities stolen. Vargas, 28 Kan. App. 2d at 870, 24 P.3d at 157. According to the court, there was no mention of any intent by the legislature to

protect a third party from identity theft. Vargas, 28 Kan. App. 2d at 870, 24 P.3d at 157. Thus, because the defendant in Vargas stole a false identity rather than the identity of a real person, the statute was inapplicable. Vargas, 28 Kan. App. 2d at 869-70, 24 P.3d at 157.

The court went on to say that even if the statute applied to the facts in that case, the defendant could not be found guilty of identity theft. Vargas, 28 Kan. App. 2d at 870, 24 P.3d at 157. Noting that the statute required an "intent to defraud," the court reasoned that the defendant did not intend to defraud his employer by stealing money or by being compensated for services not actually rendered. Vargas, 28 Kan. App. 2d at 870, 24 P.3d at 157. Also, the defendant did not receive any "economic benefit," because he was paid for the time he worked. Vargas, 28 Kan. App. 2d at 870, 24 P.3d at 157. With respect to the argument that the defendant's employer would not have hired the defendant had it known of his status as an illegal immigrant, the court responded that the employer was not defrauded in any way by the defendant's actions. Vargas, 28 Kan. App. 2d at 870, 24 P.3d at 157.

At first glance, Vargas appears to support the defendant's position. However, a more recent Kansas decision, State v. Oswald, 36 Kan. App. 2d 144, 137 P.3d 1066 (2006), limits the application of Vargas. In Oswald, the defendant was charged with identity theft for using another person's name and social security card to open a cell phone account. Oswald, 36 Kan. App. 2d at 146, 137 P.3d at 1068. The defendant knew the victim, Willhoite, who had provided the defendant with her social security information for the limited purpose of paying a phone bill. Oswald, 36 Kan. App. 2d at 145, 148, 137 P.3d at 1067, 1069. Willhoite never made any payments on the newly established account, because the defendant arranged for the cell phone bills to be sent to the defendant's address. Oswald, 36 Kan. App. 2d at 145, 137 P.3d at 1067.

Relying on Vargas, the defendant argued that she obtained no "economic benefit" from her use of Willhoite's information. Oswald, 36 Kan. App. 2d at 148, 137 P.3d at 1069. The Oswald court rejected that argument, reasoning that due to her poor credit the defendant would have been unable to establish a cellular account without using Willhoite's identifying information. Oswald, 36 Kan. App. 2d at 148-49, 137 P.3d at 1069. The Oswald defendant also relied on the language in Vargas stating that the defendant did not intend to defraud his employer by stealing money or by being compensated for services not actually rendered. Oswald, 36 Kan. App. 2d at 149, 137 P.3d at 1069. However, the Oswald court stated that this language in Vargas was "clearly dicta" because the Vargas decision was based on the defendant's use of a fraudulent identity, rather than an identity that belonged to a real person. Oswald, 36 Kan. App. 2d at 149, 137 P.3d at 1069-70.

Vargas, in light of Oswald, does not support defendant. The Oswald court interpreted Vargas to hold that a defendant can be convicted of identity theft only if the stolen identity belongs to a real person. See Oswald, 36 Kan. App. 2d at 149, 137 P.3d at 1069. Thus, Vargas is distinguishable on this basis because defendant in this case used the identity of a real person, Mona Cantu. Also, the very language in Vargas relied upon by defendant was characterized as "clearly dicta" by the Oswald court. As a result, defendant's reliance on Vargas for the proposition that she did not intend to defraud her employer by stealing money or by being compensated for services not actually rendered is unpersuasive.

The State urges us to follow State v. Ramirez, 246 Wis. 2d 802, 633 N.W.2d 656 (2001), where the defendant admitted to using another person's social security number to obtain a job. The social security number belonged to a person living in Nevada. Ramirez, 246 Wis. 2d at 805, 633 N.W.2d at 658. The defendant was charged under Wisconsin's identity theft statute, which stated

that "[w]hoever intentionally uses or attempts to use any personal identifying information or personal identification document of an individual to obtain credit, money, goods, services or anything else of value without the authorization or consent of the individual and by representing that he or she is the individual or is acting with the authorization or consent of the individual is guilty of a Class D felony." Ramirez, 246 Wis. 2d at 805 n.3, 633 N.W.2d at 658 n.3. Among other things, the defendant argued that he did not obtain a thing of value as the result of his unauthorized use of another person's social security number. Ramirez, 246 Wis. 2d at 808, 633 N.W.2d at 659. The court rejected that argument, stating that what the defendant ultimately sought and obtained was the compensation and other economic benefits that flowed from the employment. Ramirez, 246 Wis. 2d at 808, 633 N.W.2d at 659. Because the defendant obtained money in the form of wages as the result of his unauthorized use of another's personal identifying information, he was guilty of identity theft. Ramirez, 246 Wis. 2d at 813, 633 N.W.2d at 662.

For the following reasons, we hold that defendant "fraudulently obtained" both money and services as a result of her unauthorized use of Cantu's name and social security number. Defendant admitted that she knowingly used Cantu's name and social security number to obtain a job at Terra Harvest Foods, where she received more than $50,000 in wages. As part of her employment package, defendant was issued an insurance policy in Cantu's name, through which she received approximately $31,000 in medical services. Obviously, had defendant not used Cantu's name and social security number to obtain a job, she would not have been entitled to receive the wages and insurance benefits that flowed directly from her employment. While it is true that defendant did not actually steal money or services from her employer, she did obtain employment, compensation, and insurance benefits by misrepresenting herself as someone else. Contrary to defendant's assertion,

the statute did not require her to "defraud" her employer by "stealing money" or by "being compensated for services not actually rendered" in order to be guilty of identity theft. Again, the "fraudulent" behavior in this case consisted of defendant's knowing use of Cantu's identifying information to obtain employment, wages, and benefits to which she would not otherwise have been entitled. Perhaps more importantly, section 16G--25 of the Identity Theft Law states that "[i]t is no defense to a charge of *** identity theft that the offender has an interest in the credit, money, goods, services, or other property." (Emphasis added.) 720 ILCS 5/16G--25 (West Supp. 2003). As the State points out, the statute, on its face, defeats defendant's claim that she has a defense to the identity theft charges because she earned the money and the insurance benefits. Under the statute, her interest in these items provides no defense. Thus, the fact that defendant earned the wages and qualified for the insurance benefits does not somehow negate the fact that they were "fraudulently obtained."

Our holding is consistent with the legislative declaration of the Identity Theft Law, which focuses on the substantial burden placed upon the economy as a result of identity theft. See 720 ILCS 5/16G--5(a) (West Supp. 2003). In addition to deceiving her employer, defendant's actions caused Cantu numerous financial difficulties relating to unemployment benefits, disputed medical bills, and federal and state tax refunds. For this reason, the legislature stated that "identity theft shall be identified and dealt with swiftly and appropriately considering the onerous nature of the crime." 720 ILCS 5/16G--5(a) (West Supp. 2003).

Our interpretation of the statute is also reinforced when one considers the legislative debates. See In re Consolidated Objections to Tax Levies of School District No. 205, 193 Ill. 2d 490, 502-03 (2000) (although it is not necessary to resort to legislative history to construe a statute whose

meaning is plain, the history did not conflict with the supreme court's interpretation of the statute). When the identity theft legislation was originally proposed, it resembled the Wisconsin identity theft statute discussed in Ramirez, in that identity theft was defined as "using another personal identity to obtain credit, money, goods, services or other property in that person's name without their written permission while representing that one is that person or is acting on their behalf." (Emphasis added.) 91st Ill. Gen. Assem., Senate Proceedings, March 24, 1999, at 35 (statements of Senator Munez). An amendment by the House of Representatives, adopted by the Senate, "[c]larifie[d] the standard for finding the defendant guilty, eliminating confusing language about written permission to simply require that the defendant fraudulently obtained credit, money, goods, service [sic] or other property in the name of another in order for the defendant to be found guilty." 91st Ill. Gen. Assem., Senate Proceedings, May 18, 1999, at 18 (statements of Senator Munez). The amendment, which was "largely technical in nature" (91st Ill. Gen. Assem., House Proceedings, May 6, 1999, at 56 (statements of Representative Righter)), reinforces our interpretation that defendant's conduct falls under section 16G--15(a)(1) of the Identity Theft Law. By representing herself as Cantu (without Cantu's permission) to obtain a job, defendant "fraudulently obtained" money and services during the course of her employment.

### B. Credit Against Fine

Defendant's second argument is that she is entitled to a $5 credit against her fine. A probable cause statement, which lacks a file-stamp and a judge's signature, indicates that defendant was arrested on December 22, 2003. A bail bond, which is file-stamped December 23, 2003, shows that defendant posted bond on December 22, 2003. According to the State, the record is "not entirely

clear" that defendant spent a partial day in custody before posting bond. Defendant responds that there was no need to post bond on December 22, 2003, unless she was in custody.

Section 110--14 of the Code of Criminal Procedure of 1963 provides: "Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed credit of $5 for each day so incarcerated upon application of the defendant." 725 ILCS 5/110--14 (West 2002). Any portion of a day in custody constitutes a full day for purposes of section 110--14. People v. Stahr, 255 Ill. App. 3d 624, 627 (1994). Also, defendant's failure to raise this issue in the trial court does not mean it is waived. See People v. Woodard, 175 Ill. 2d 435, 447-48, 457 (1997) (the credit is not limited to people who apply for it at the trial level; as such, the normal rules of waiver do not apply and the right is cognizant on appeal as a matter of course subject to the defendant's application).

According to the probable cause statement, the bail bond, and the presentence report, defendant was arrested on December 22, 2003, and released on bail the same day. We agree with defendant that the record is sufficiently clear that she spent a partial day in custody before posting bond. Accordingly, defendant is entitled to a $5 credit against her fine. See Stahr, 255 Ill. App. 3d at 627 (where the defendant was arrested and released on bail on the same day, she was entitled to a $5 credit against her fine).

### III. CONCLUSION

For the foregoing reasons, the judgment of the Winnebago County circuit court is affirmed as modified to reflect a $5 credit against defendant's fine.

Affirmed as modified.

McLAREN and BYRNE, JJ., concur.