(165 P.3d 298)
No. 96,502

STATE OF KANSAS, *Appellee*, v. MARIA ELENA HERNANDEZ MEZA, *Appellant*.

Opinion filed August 3, 2007.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Terri L. Johnson*, county attorney, and *Paul J. Morrison*, attorney general, for appellee.

Before MARQUARDT, P.J., MCANANY, J., and BRAZIL, S.J.

MCANANY, J.: Nayssa Davila, a lifetime resident of Texas, had been adopted by her stepfather at age 7 and her name was changed to Nyssa Carlson. At some point following her adoption the name on her social security account was changed from Nayssa Davila to Nyssa Nicole Carlson.

Maria Meza arrived in this country from Mexico in 1998 at age 15. She lived with her grandparents in Pittsburg. She purchased a social security card and a Kansas ID card in the name of Nayssa Davila from a man in Missouri and used these documents to obtain work at a bacon packaging plant in Pittsburg.

In October 2000, Meza obtained employment at Peerless Products in Fort Scott using the name and documents of Nayssa Davila. The following year Carlson began getting threatening calls from debt collection agencies.

In August 2004, Carlson received a letter from the Internal Revenue Service (IRS) stating she owed over $3,000 in unpaid taxes. She learned that the unpaid taxes were assessed for income she reportedly earned at Peerless. Carlson had never been to Kansas. She contacted the human resources manager at Peerless and Officer Robert Jackson of the Fort Scott Police Department. Jackson went to Peerless and learned that Peerless had an employee named Nyssa Davila who used a social security card and a Kansas identification card issued under that name. When Meza returned to

Peerless a few days later to pick up her paycheck, Jackson arrested her on an outstanding warrant for failure to appear and, after *Mirandizing* her, questioned her about her identity. Meza stated that she was in the United States illegally and had been posing as Nyssa Davila at her places of employment.

Meza was charged with identity theft in violation of K.S.A. 2004 Supp. 21-4018(a). The court conducted a bench trial and Meza was found guilty and sentenced to 18 months' probation with an underlying prison term of 12 months. She now appeals.

Meza attacks the sufficiency of the evidence, contending that the State failed to prove the "intent to defraud for economic benefit" required by the statute. She also claims her prosecution is time-barred by the applicable statute of limitations.

In determining the sufficiency of the evidence, we review all the evidence in the light most favorable to the prevailing party, the State, in order to determine if a rational factfinder could have found Meza guilty beyond a reasonable doubt. See *State v. Kesselring*, 279 Kan. 671, 679, 112 P.3d 175 (2005). In considering the statutory requirements for a successful prosecution and the potential bar of the statute of limitations, appellate review is unlimited. *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006).

### Intent

Meza claims the State failed to establish that she had the required "intent to defraud for economic benefit."

Our primary task in considering K.S.A. 2004 Supp. 21-4018(a) is to determine the legislature's intent. We presume the legislature expressed its intent through the language of the statutory scheme it employed. In considering the language of the statute, we give ordinary words their ordinary meanings. We will not add language not found in the statute or exclude language found in it. If the statute is plain and unambiguous, we will give effect to the legislature's expressed intent rather than substitute our own view of what the law ought to be. See *Bryan*, 281 Kan. at 159.

K.S.A. 2004 Supp. 21-4018(a) defines identity theft as "knowingly and with intent to defraud for economic benefit, obtaining, possessing, transferring, using or attempting to obtain, possess,

transfer or use, one or more identification documents or personal identification number of another person other than that issued lawfully for the use of the possessor."

K.S.A. 2004 Supp. 21-3110(9) defines "intent to defraud" as "an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property."

In *City of Liberal v. Vargas*, 28 Kan. App. 2d 867, 24 P.3d 155, *rev. denied* 271 Kan. 1035 (2001), the defendant used a false identification card to obtain employment. However, Vargas adopted the identity of a totally fictitious person, unlike our present case where Meza stole the identity of a real person. In *Vargas*, this court focused on this distinction and concluded that the statute was intended to protect real persons from having their identities stolen and, in the absence of such a victim, the statute did not apply. 28 Kan. App. 2d at 868-70. Then, by way of dicta, the court noted that the employer in *Vargas* was not defrauded to obtain an economic benefit in that Vargas did a day's work for a day's pay.

We again considered the sufficiency of the evidence to prove identity theft in *State v. Oswald*, 36 Kan. App. 2d 144, 137 P.3d 1066, *rev. denied* 282 Kan. 795 (2006). Oswald obtained the victim's social security number and credit card information with the victim's consent in order to pay a cellular phone bill, but then used the information without the victim's consent to obtain a new cellular telephone account. We found that the statute did not require proof of economic loss to the victim, but only proof of Oswald's intent to defraud for her own economic benefit, and that Oswald's ability to obtain an account for cellular telephone service using the victim's identity was an economic benefit to her. 36 Kan. App. 2d at 148-50.

In the case before us, the statute is satisfied if Meza, for her own economic benefit, used Carlson's social security number knowingly and with the intent to defraud Peerless by inducing it to create for her a right with respect to property.

The evidence established that Meza used a social security card bearing Carlson's former name and her social security number in

order to induce Peerless into believing she was Nyssa Davila, a person eligible to be employed, when in fact she was not. Meza intended for Peerless to rely on this deception and to hire her, thereby giving Meza a job which was an economic benefit to her. In hiring her, Peerless invested Meza with certain property rights which attached to her job, such as access to any available employee benefits, rights under federal laws such as ERISA, together with her entitlement to the protection of the laws of Kansas relating to employment, wage and hour regulations, workers compensation and unemployment benefits, and the like. Meza's conduct satisfied the requirements of the statute.

Our interpretation is consistent with that of the courts of other states which have considered this issue under comparable statutes. In *State v. Ramirez*, 246 Wis. 2d 802, 633 N.W.2d 656, (Wis. App.) *rev. denied* 246 Wis. 2d 176 (Wis. 2001), the defendant, an illegal alien, was charged with identity theft for using another person's social security number to obtain employment. One of the elements of the charge was that the defendant "obtain a thing of value." 246 Wis. 2d at 805. The Wisconsin Court of Appeals rejected Ramirez' argument that a job did not, in and of itself, have value, stating:

"We think this is far too narrow a concept of the value of Ramirez's employment at Trek Bike. True, Ramirez obtained employment at Trek Bike. But what Ramirez ultimately sought and obtained was the compensation and other economic benefits that flowed from the employment. Obviously these were things of value within the meaning of [the statute]." 246 Wis. 2d at 808.

See also the opinion affirming a defendant's conviction under Illinois' identity theft statute in *People v. Montoya*, 373 Ill. App. 3d 78, 84-85, 868 N.E.2d 389 (2007), in which the court followed the reasoning in *Ramirez*, stating:

"Obviously, had defendant not used [the victim's] name and social security number to obtain a job, she would not have been entitled to receive the wages and insurance benefits that flowed directly from her employment. While it is true that defendant did not actually steal money or services from her employer, she did obtain employment, compensation, and insurance benefits by misrepresenting herself as someone else. Contrary to defendant's assertion, the statute did not require her to 'defraud' her employer by 'stealing money' or by 'being compensated for services not actually rendered' in order to be guilty of identity theft. Again, the 'fraudulent' behavior in this case consisted of defendant's knowing use

of [the victim's] identifying information to obtain employment, wages, and benefits to which she would not otherwise have been entitled."

There was substantial evidence to support Meza's conviction under K.S.A. 2004 Supp. 21-4018(a).

*Statute of Limitations*

Next, Meza points out the 2-year limitation period of K.S.A. 2004 Supp. 21-3106(8) and argues that the limitation period began to run when she first used the false social security card to obtain employment in 1998. This prosecution did not commence until 2004.

The statute of limitations for prosecution of identity theft is 2 years pursuant to K.S.A. 2004 Supp. 21-3106(8). The question is whether K.S.A. 2004 Supp. 21-4018(a) criminalizes a single, isolated act, or an entire course of conduct. According to K.S.A. 2004 Supp. 21-3106(10), a separate offense is committed each time every element of the offense occurs, unless it plainly appears that the legislature intended to prohibit a continuing offense, in which case the offense occurs when the course of the conduct ends. Thus, if Meza's theft of Carlson's identity was a course of conduct which the legislature intended to criminalize, then that conduct ended on the day Meza was arrested and her prosecution was timely.

The crime of theft is not a continuing offense. *State v. Gainer*, 227 Kan. 670, Syl. ¶ 2, 608 P.2d 968 (1980). Identity theft, on the other hand, hardly qualifies as garden-variety theft. As opposed to the age-old offense of theft which is rooted in and essentially unchanged since Biblical times, identity theft is the product of the Information Age and was first criminalized in Kansas in 1998. Thus, we must look at identity theft from a fresh perspective.

The court declared in *Gainer* that "[t]o constitute a continuing offense it must plainly appear in the statute defining such offense that there is a clear legislative purpose to make the prohibited course of conduct a continuing offense." 227 Kan. at 673.

Since the intent of the legislature governs, we turn to the legislative history of K.S.A. 2004 Supp. 21-4018. Prior to the enactment of the statute in 1998, hearings were held by the House Committee on Federal and State Affairs. The committee heard the

remarks of three proponents of the bill. No one spoke in opposition. Representative Bonnie Sharp, the author of the bill, testified to her concern about the wrongful use of another person's social security number for multiple purposes, such as to obtain illegal checking accounts or credit card accounts. Kyle Smith, the Assistant Attorney General assigned to the Kansas Bureau of Investigation, testified regarding the surreptitious acquisition of credit card or social security information with which a wrongdoer can gain access to other personal information which can lead to multiple wrongful acts. Dave Schroeder, a KBI Special Agent whose specialty is computer-related crimes, described identity theft as "[a]cquring someone's personal identifying information in an effort to impersonate them or commit various criminal acts in that person's name. Armed with a stolen identity, criminals commit numerous forms of fraud." Minutes, House Comm. on Federal and State Affairs, February 12, 1998, pp. 1-2.

It is clear that in enacting K.S.A. 2004 Supp. 21-4018(a), the legislature considered identity theft to be not a single act but a continuous course of criminal conduct. The very nature of identity theft involves more than the surreptitious acquisition of a victim's personal information. It includes the multitude of injurious acts which flow from the acquisition of that information.

In *State v. Jones*, 13 Kan. App. 2d 520, Syl. ¶¶ 3, 4, 775 P.2d 183 (1989), *aff'd* 246 Kan. 214, 787 P.2d 738 (1990), this court found that welfare fraud and theft involving the wrongful acceptance of public assistance benefits over time constituted a continuing offense. The court noted that while *Gainer* involved "a single taking of another's property," the offenses in *Jones* involved the "wrongful taking of benefits on a monthly basis over a period of time." 13 Kan. App. 2d at 523-24.

Meza's conduct is similar to the conduct in *Jones*. Meza's misrepresentation of her identity was repeated every payday when she accepted, endorsed, and cashed a paycheck made out to Nyssa Davila, for whom Peerless reported these earned wages to the IRS.

Our analysis of this issue is consistent with that of the courts of other states which have considered it. In *Ramirez*, the Wisconsin Court of Appeals concluded that "the legislature envisioned that

the theft of a person's identity would, in many instances, produce recurring episodes in which the defendant would obtain things of value as a result of the original act of identity theft. . . . We therefore conclude that the statute creates a continuing offense." 246 Wis. 2d at 812.

A consistent result was obtained in *State v. Leyda*, 157 Wash. 2d 335, 138 P.3d 610 (2006), though the issue was presented there in the converse. Leyda had been prosecuted for multiple acts of identity theft and argued that his conduct constituted a continuous course of conduct for which only one charge should have been brought. The Washington Supreme Court agreed, holding that the Washington identity theft statute created a continuing offense. 157 Wash. 2d at 337-38, 343-45. The court concluded:

"[O]nce the accused has engaged in any one of the statutorily proscribed acts against a particular victim, and thereby committed the crime of identity theft, the unit of prosecution includes any subsequent proscribed conduct, such as using the victim's information to purchase goods after first unlawfully obtaining such information. [Citations omitted.]" 157 Wash. 2d at 345.

Courts in Alabama and Georgia have reached the same result. See *Ex parte Egbuonu*, 911 So. 2d 748, 753 (Ala. Crim. App. 2004) (Identity theft, by its definition, is a continuing offense that in most instances will occur in more than one county or even more than one state.); *State v. Mayze*, 280 Ga. 5, 7, 622 S.E.2d 836 (2005) ("[T]he General Assembly has clearly defined the crime of identity fraud as a continuing offense which extends into the county where the victim resides or is located.").

The State's prosecution of Meza for this continuing course of criminal conduct was brought within the limitation period of K.S.A. 2004 Supp. 21-3106(8).

*Evidence of Victim's Credit Problems*

Finally, Meza argues the court erred in admitting evidence of Carlson's credit problems as res gestae. She claims the testimony regarding Carlson's credit report should have been analyzed under K.S.A. 60-455 as other crimes evidence. The State admits that *State v. Gunby*, 282 Kan. 39, Syl. ¶ 5, 144 P.3d 647 (2006), abolished res gestae as an independent basis for admitting evidence in Kan-

sas, but argues the trial court did not rely on the evidence of Carlson's credit problems and, therefore, the error was harmless. The State is correct. After hearing Carlson's testimony regarding her credit report, the court relied only on the evidence regarding the IRS liability assessed against Carlson for Meza's wages and specifically stated that it was "not counting the testimony of the victim here as to other difficulties that she's had." Nevertheless, the notion of harmless error presumes there was error in the first place. We are not prepared to accept this presumption, but we will examine the issue further.

While the trial court relied on res gestae in admitting this testimony, we must consider whether the court was right for the wrong reason. See *State v. Nash*, 281 Kan. 600, 602, 133 P.3d 836 (2006). We must also consider whether the credit report constituted evidence of other crimes which required an analysis under K.S.A. 60-455.

The challenged testimony was that Carlson had problems with her credit report and that some of the addresses on her credit report were addresses linked to Meza. This evidence was relevant to the question of whether Meza was using Carlson's identifying information in violation of the identity theft statute. This evidence related to elements of the crime at issue, not other crimes which would require further analysis under K.S.A. 60-455. The testimony was relevant in that it tended to prove an element of the crime, and it was material in that Meza's commission of the acts in question was a matter in controversy. The evidence was properly admitted. Meza's objections to the credit report testimony on the grounds that it was irrelevant, immaterial, or other crimes evidence were properly overruled. Thus, we need not resort to a harmless error analysis since the district court did not err in admitting this testimony.

Affirmed.