(137 P.3d 1066)
No. 94,242

STATE OF KANSAS, *Appellee,* v. ROBIN OSWALD, *Appellant.*

Opinion filed July 14, 2006.

*Rick Kittel,* of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier,* assistant district attorney, *Paul J. Morrison,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before McANANY, P.J., MARQUARDT and CAPLINGER, JJ.

CAPLINGER, J.: Robin L. Oswald challenges the sufficiency of the evidence to support her conviction for identity theft, K.S.A.

2000 Supp. 21-4018. We affirm, finding that under that statute, the State presented sufficient evidence to prove that the defendant used identifying information with the intent to defraud for economic benefit, where Oswald used the victim's social security number and credit card information to open a cellular phone account without the victim's consent or knowledge.

*Factual background*

In August 2002, Oswald asked her friend, Sandra Willhoite, for $200 to pay Oswald's cellular phone bill because Oswald was unable to get to her bank. Over the phone, Willhoite provided Oswald with Willhoite's social security number and credit card information so Oswald could pay her bill. Willhoite did not give Oswald permission to use her personal information or credit card for any other reason.

Oswald later called Willhoite and informed her the amount of the bill was more than Oswald expected and that Oswald had charged over one thousand dollars to Willhoite's credit card. When Willhoite responded that the amount was "way too much," Oswald indicated she would cancel the transaction within 3 business days. Trusting Oswald, Willhoite did not attempt to cancel the transaction herself.

In early September, Willhoite received her credit card statement and discovered Oswald had not cancelled the charge, which was in the amount of $1,374. Sometime later, Willhoite began receiving information by mail from Nextel Communications. Willhoite contacted Nextel and discovered that someone had opened a new cellular phone account and obtained two new cell phone numbers using Willhoite's name and social security number.

Upon investigation, Willhoite discovered that although the account had been opened in her name, the bills were being sent to Oswald's address. Willhoite testified she also discovered someone had paid a bill in her name, but the record does not indicate whether this payment was for the bill Willhoite already was aware of or whether the payment was made on the new account. In any event, Willhoite testified she never received any bills or made any payments on the newly established account. The record indicates

Oswald placed the account in her own name sometime after the first billing cycle.

When Willhoite confronted Oswald, Oswald initially denied opening the account. Oswald later admitted that she had opened the account, but said she did not think Willhoite would mind that she had done so. During a subsequent conversation between Oswald and Willhoite about the account, Oswald began crying and asked Willhoite for more money. Oswald said she had "reached the end of her rope." Willhoite declined to assist Oswald. During Willhoite's last conversation with Oswald about the money Willhoite had lent her, Oswald told Willhoite "to wait in line [for payment] like everybody else."

After Willhoite contacted law enforcement, Johnson County Sheriff's Deputy Michael Pfannenstiel interviewed Oswald. Oswald admitted she had poor credit so she used Willhoite's information to establish the Nextel account. She also admitted she used Willhoite's credit card to make a vehicle payment. Although Oswald claimed she thought she had permission to open the account, she acknowledged she received Willhoite's credit card information and social security number only to pay her prior cell phone bill.

The State charged Oswald with identity theft:

"That on or about the 6th day of September, 2002, in the County of Johnson, State of Kansas, ROBIN L. OSWALD did then and there unlawfully, willfully, knowingly, feloniously and with the intent to defraud for economic benefit, obtain, possess, transfer, use or attempt to obtain, possess, transfer or use an identification document or personal identification number, to-wit: a social security number, of another person, to-wit: Sandra Willhoite, other than issued lawfully for use of the possessor, . . . in violation of K.S.A. 21-4018."

At the preliminary hearing, the State relied on Oswald's opening of the Nextel account as the basis for the identity theft charge. Oswald subsequently filed a motion to dismiss, arguing the State had presented no evidence at the preliminary hearing and could not present evidence at trial to establish that Oswald intended to defraud Willhoite for economic benefit. The trial court denied the motion.

Following a trial to the court based upon stipulated facts, the court found Oswald guilty of identity theft. Oswald was sentenced to 11 months' imprisonment but granted 24 months' probation.

On appeal, Oswald argues the evidence presented to the trial court was insufficient to sustain her conviction for identity theft. Specifically, Oswald contends the State failed to prove Oswald acted with "intent to defraud for economic benefit" because Wilhoite voluntarily provided her social security number and because Oswald received no economic benefit from opening the account.

"When a defendant challenges the sufficiency of evidence, this court's standard of review is whether, after review of all of the evidence, viewed in the light most favorable to the State, the appellate court is convinced that a rational jury could have found the defendant guilty beyond a reasonable doubt. [Citation omitted.]" *State v. Mays,* 277 Kan. 359, 377, 85 P.3d 1208 (2004). However, when a case is decided on stipulated facts, the appellate court has de novo review. *State v. Downey,* 27 Kan. App. 2d 350, 362, 2 P.3d 191, *rev. denied* 269 Kan. 936 (2000). This court's review is also unlimited with respect to the interpretation of statutes. *State v. Lewis,* 263 Kan. 843, 847, 953 P.2d 1016 (1998).

K.S.A. 2000 Supp. 21-4018(a) defines identity theft:

"Identity theft is knowingly and with intent to defraud for economic benefit, obtaining, possessing, transferring, using or attempting to obtain, possess, transfer or use, one or more identification documents or personal identification number of another person other than that issued lawfully for the use of the possessor."

"Intent to defraud" is defined in K.S.A. 21-3110(9) as "an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property."

In interpreting the scope of K.S.A. 2000 Supp. 21-4018(a), we are mindful of the fundamental rule of statutory construction:

" 'The fundamental rule of statutory construction to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be.' [Citation omitted.]" *Pieren-Abbott v. Kansas Dept. of Revenue,* 279 Kan. 83, 88, 106 P.3d 492 (2005).

Oswald maintains that because Willhoite voluntarily provided Oswald with her social security and credit card information, the State could not prove Oswald intended to defraud Willhoite.

This argument is flawed in several respects. First, it ignores the language of the statute, which does not simply criminalize "theft" of identifying information, but rather criminalizes obtaining, possessing, transferring, or using identifying documents or a personal identification number, with the "intent to defraud for economic benefit." See K.S.A. 2000 Supp. 21-4018(a).

Further, the evidence indicates that while Willhoite voluntarily provided her identifying information to Oswald to pay a phone bill estimated by Willhoite to be approximately $200, she did not authorize the use of that information beyond that limited purpose. Because Oswald used the information for an unauthorized purpose—to obtain a cellular phone account from Nextel—and then initially denied her actions when questioned by Willhoite, a rational jury could conclude beyond a reasonable doubt that Oswald used Willhoite's social security number with an intent to defraud Willhoite.

Even though we have found the evidence sufficient to establish an "intent to defraud," Oswald contends the evidence was nevertheless insufficient to establish that she intended to defraud "for economic benefit."

As the State points out, the right to open an account and connect to a cellular network has value. That is particularly true here, where the evidence indicated that due to her poor credit, Oswald would not have been able to establish a cellular account without utilizing Willhoite's identifying information and permitting Nextel to believe Oswald was Willhoite. Moreover, the statute does not require proof of actual economic loss by the victim, but only that the defendant "[intended] to defraud" for economic benefit. See K.S.A. 2000 Supp. 21-4018(a).

Relying on *City of Liberal v. Vargas*, 28 Kan. App. 2d 867, 24 P.3d 155 (2001), *rev. denied* 271 Kan. 1035 (2001), Oswald argues she obtained no economic benefit from her use of Willhoite's information. In *Vargas*, this court found that the defendant, an illegal alien, did not commit identity theft by purchasing a false identification card and using it to obtain employment. 28 Kan. App. 2d at 870-71.

The *Vargas* court reviewed the legislative history of K.S.A. 2000 Supp. 21-4018 and concluded the legislature passed the statute "in order to protect individuals who have their identity stolen." 28 Kan. App. 2d at 870. It found the statute inapplicable to the facts before it, however, because the false identification purchased by the defendant did not appear to belong to a real person who had his "identity" stolen. 28 Kan. App. 2d at 869.

Contrary to Oswald's assertion, *Vargas* supports application of K.S.A. 2000 Supp. 21-4018 in this case. As this court noted in *Vargas*, the legislative history of K.S.A. 2000 Supp. 21-4018 indicates the statute was directed at the use of social security numbers to obtain illegal checking or credit card accounts. The court in *Vargas* merely interpreted the statute to require that the identifying information be derived from a real person—*i.e.*, a real victim, rather than from the purchase of a fraudulent identity. 28 Kan. App. 2d at 868.

Thus, *Vargas* supports the statute's application here, where Oswald used Willhoite's social security number to obtain an account Oswald would have been unable to obtain on her own because of her poor credit.

Oswald points out, however, that the *Vargas* court noted the defendant did not intend to "defraud [his former employer] by stealing money or by being compensated for services not actually rendered." 28 Kan. App. 2d at 870. This language from *Vargas*, however, is clearly dicta in that the decision was based upon the defendant's use of a fraudulent identity. Moreover, even if *Vargas* is controlling and the defendant's intent to defraud someone other than the individual whose identity was stolen is relevant, we have no need in this case to consider such evidence. As discussed, the State proved Oswald intended to defraud the individual whose identity was taken—the individual whom the statute was intended to protect.

The State further points out that subsequent to this court's decision in *Vargas*, the legislature removed the word "economic" from the identity theft statute. However, that action has no bearing on our decision here. "Criminal statutes and penalties in effect at the time of a criminal offense are controlling. [Citation omitted.]"

*State v. Denney*, 278 Kan. 643, 646, 101 P.3d 1257 (2004). Moreover, as discussed above, we find that even under the wording of the statute in existence at the time of this offense, the State presented sufficient evidence to prove Oswald obtained Wilhoite's identifying information with the intent to defraud for economic benefit.

Accordingly, we affirm Oswald's conviction of identity theft.

Affirmed.