No. 112,322

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GUADALUPE OCHOA-LARA,
*Appellant*.

SYLLABUS BY THE COURT

1.

Whether a state statute is preempted by federal law involves statutory interpretation and raises a question of law over which an appellate court exercises de novo review.

2.

To determine whether a state law is preempted by a federal law, Congressional intent is determined by interpreting the language of the preemption statute and the statutory framework surrounding it. When there is an express preemption clause, an appellate court should focus on the plain wording of the clause which is the best evidence of Congressional intent.

3.

When conducting a preemption analysis, an appellate court should presume that the historic police powers of the State are not superseded unless that was the clear and manifest purpose of Congress.

4.

The Immigration Reform and Control Act (IRCA) establishes a system of employment-related verification of immigration status. The preemption language of 8 U.S.C. § 1324a(b)(5) (2012) prohibits individual states from establishing criminal penalties in this area.

5.

The Kansas identity theft statute does not regulate conduct associated with the employment-related verification of immigration status, nor does it create criminal penalties for unauthorized aliens working or seeking work in Kansas. The state prosecution of identity theft based upon the unlawful use of another's Social Security number is not preempted by the IRCA.

6.

Kansas Supreme Court Rule 6.02(a)(5) (2014 Kan. Ct. R. Annot. 40) requires an appellant raising a constitutional issue for the first time on appeal to affirmatively invoke and argue in the appeal brief an exception to the general rule that such claims may not be raised for the first time on appeal. Failure to comply with this requirement risks a determination by the appellate court that the issue has been abandoned.

Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed November 25, 2015. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, senior deputy district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., GREEN, J., and JEFFREY E. GOERING, District Judge, assigned.

GOERING, J.: Guadalupe Ochoa-Lara was convicted of two counts of identity theft following a bench trial on stipulated facts. Ochoa-Lara argues on appeal that the charges should have been dismissed by the district court because the Immigration Reform and Control Act (IRCA) preempts state prosecution for identity theft based on the unlawful use of another person's Social Security number. Ochoa-Lara also argues that the charges were multiplicitous. We find that the IRCA does not preempt state prosecution for identity theft. We further find that Ochoa-Lara failed to raise the issue of multiplicity in the district court and he has failed to preserve this issue for appellate review.

The facts to which the parties stipulated at trial are as follows:

"1. During November and December of 2011, Overland Park Police Department officers and DHS/ICE agents were attempting to contact Christian Ochoa-Lara at 9135 Robinson, Apartment 2G, Overland Park, Johnson County, Kansas. At that location, officers learned that the apartment was leased to Guadalupe Ochoa-Lara. Officers obtained a copy of the lease and determined Guadalupe Ochoa-Lara, the defendant, used a social security number issued to another individual to lease the apartment. Officers contacted [T.M.], who is lawfully issued the social security number used by Guadalupe Ochoa-Lara to rent the apartment, and she advised she had no knowledge her number was being used and did not consent to it being used. [T.M.] later reported that she contacted the IRS and was notified that income had been reported under her social security number which she reported was not earned by her.

"2. Officers determined that Guadalupe Ochoa-Lara was employed at the Long Branch Steakhouse in Lenexa, Johnson County, Kansas. Officers contacted personnel for Long Branch Steakhouse and confirmed that Guadalupe Ochoa-Lara did work at the Lenexa location from approximately May of 2011 to December of 2011. Officers reviewed the Form W-4 completed by Ochoa-Lara on May 10, 2011 in Lenexa, Johnson County, Kansas and observed he used the social security number issued to [T.M.] to complete the form. Personnel for Long Branch Steakhouse confirmed a social security number is required in order for individuals to be hired by their company and also for both federal and state tax withholding purposes.

3

"3. Investigators reported Guadalupe Ochoa-Lara does not have a social security number lawfully issued to him and he used [T.M.'s] number in order to gain employment."

Prior to trial, Ochoa-Lara filed two separate motions to dismiss. In his first motion, Ochoa-Lara argued that his case should be dismissed because the complaint was fundamentally flawed. Specifically, Ochoa-Lara maintained that because the Kansas identity theft statute had changed during the time he was charged he did not have proper notice of the charges against him and could not adequately prepare his defense. In his second motion to dismiss, Ochoa-Lara argued that his case should be dismissed for lack of jurisdiction because the IRCA preempted the prosecution of him for violating Kansas' identity theft statute.

At the hearing of the motions before the district court, the State agreed to dismiss two of Ochoa-Lara's charges based on jurisdiction. The State then requested to split count 1 into two separate charges due to the fact that the Kansas identity theft statute had changed. Effective July 1, 2011, K.S.A. 21-4018 was repealed and replaced by K.S.A. 2011 Supp. 21-6107. As such, count 1 of the amended complaint covered conduct prior to July 1, 2011, and count 2 covered conduct post July 1, 2011. Ochoa-Lara did not argue to the district court that the counts in the amended complaint were multiplicitous.

Based on the stipulated facts, the district court found Ochoa-Lara guilty of both counts of identity theft. Ochoa-Lara was given a concurrent sentence of 7 months on each count and was granted probation for 18 months.

*Does federal law preempt the State's prosecution of Ochoa-Lara for identity theft?*

In his motion to dismiss for lack of jurisdiction, Ochoa-Lara argued to the district court that under the preemption provision of the IRCA, the

4

"[S]tate cannot use an I-9 for the purpose of convicting an individual of identity theft, identity fraud, or making a false writing under a State statute. Additionally, any information contained in the I-9, including names and social security numbers, and any supporting documents cannot be used for State conviction purposes."

Ochoa-Lara cited *Arizona v. United States*, 567 U.S. ___, 132 S. Ct. 2492, 2504, 183 L. Ed. 2d 351 (2012), in which the United States Supreme Court held that "any information employees submit to indicate their work status 'may not be used' for purposes other than prosecution under specified federal criminal statutes for fraud, perjury, and related conduct."

At the hearing on the motion to dismiss, the district court denied the motion, ruling that "[w]e're not relying on the I-9 at this time or any of the other federally described statutes and codes that are set forth in the *Arizona* case." On appeal, Ochoa-Lara argues that his convictions for identity theft "are simply state-level penalties for conduct prescribed under federal law."

Whether a state statute is preempted by federal law involves statutory interpretation and raises a question of law over which we exercise de novo review. *Zimmerman v. Board of Wabaunsee County Comm'rs*, 289 Kan. 926, 974, 218 P.3d 400 (2009); *Steffes v. City of Lawrence*, 284 Kan. 380, 385, 160 P.3d 843 (2007).

Under the Supremacy Clause of the United States Constitution, "the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. "Simply put, the Supremacy Clause invalidates state laws that interfere with, or are contrary to, federal law." *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 294, 255 P.3d 1186 (2011).

To determine whether a state law is preempted by a federal law, we must determine Congress' intent by interpreting the "'language of the pre-emption statute and the "statutory framework" surrounding it.'" *Wichita Terminal Ass'n v. F.Y.G. Investments, Inc.*, 48 Kan. App. 2d 1071, 1078, 305 P.3d 13 (2013) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485-86, 116 S. Ct. 2240, 135 L. Ed. 2d 700 [1996]). When there is an express preemption clause in a federal law, the court should "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S. Ct. 1732, 123 L. Ed. 2d 387 (1993). In conducting a preemption analysis, "courts should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.'" *Arizona*, 132 S. Ct. at 2501.

As to the IRCA, we begin our preemption analysis with a review of the federal statute at issue, 8 U.S.C. § 1324a (2012), which governs the unlawful employment of aliens. In *Chamber of Commerce of United States v. Whiting*, 563 U.S. 582, 131 S. Ct. 1968, 1974, 179 L. Ed. 2d 1031 (2011), the United States Supreme Court summarized 8 U.S.C. § 1324a as follows:

> "IRCA makes it 'unlawful for a person or other entity . . . to hire, or to recruit or refer for a fee, for employment in the United States an alien knowing the alien is an unauthorized alien.' 8 U.S.C. § 1324a(a)(1)(A). IRCA defines an 'unauthorized alien' as an alien who is not 'lawfully admitted for permanent residence' or not otherwise authorized by the Attorney General to be employed in the United States. § 1324a(h)(3).
>
> "To facilitate compliance with this prohibition, IRCA requires that employers review documents establishing an employee's eligibility for employment. § 1324a(b). An employer can confirm an employee's authorization to work by reviewing the employee's United States passport, resident alien card, alien registration card, or other document approved by the Attorney General; or by reviewing a combination of other documents such as a driver's license and social security card. § 1324a(b)(1)(B)-(D). The employer must attest under penalty of perjury on Department of Homeland Security Form I-9 that he 'has verified that the individual is not an unauthorized alien' by reviewing these

6

documents. § 1324a(b)(1)(A). The form I-9 itself 'and any information contained in or appended to [it] . . . may not be used for purposes other than for enforcement of' IRCA and other specified provisions of federal law. § 1324a(b)(5)."

An employer who is charged with violating 8 U.S.C. § 1324a has an affirmative defense if there has been good-faith compliance with the IRCA's I-9 document review requirements. 8 U.S.C. § 1324a(a)(3); *Whiting*, 131 S. Ct. at 1975.

The express preemption language is found in 8 U.S.C. § 1324a(b)(5), which states that the I-9 form and documents appended to it "may not be used for purposes other than for enforcement of this [Act]" and other specified provisions of federal law. The interpretation of this language should be done in the context of the entire statute. The I-9 form and the information appended to that form are all part of an employment verification system. See 8 U.S.C. § 1324a(b). When read in this light, it becomes clear that the Congressional intent of 8 U.S.C. § 1324(b)(5) was to preempt the area of employment-related verification of immigration status and to prevent individual states from establishing criminal penalties in this area. See, *e.g.*, *State v. Reynua*, 807 N.W.2d 473, 480 (Minn. App. 2011) (state perjury prosecution preempted by the IRCA).

Neither the current nor former Kansas identity theft statutes have anything to do with the employment-related verification of immigration status, nor do they create criminal penalties for unauthorized aliens working or seeking work in Kansas. K.S.A. 21-4018(a), under which Ochoa-Lara was charged in count 1, prohibits obtaining, possessing, transferring, or using the personal identification number of another person, or attempting to do so, with the intent to defraud for any benefit. K.S.A. 2011 Supp. 21-6107(a)(1), under which Ochoa-Lara was charged in count 2, prohibits "obtaining, possessing, transferring, using, selling or purchasing any personal identification number, or document containing the same, belonging to or issued to another person" with the intent to defraud that person in order to receive any benefit. The gravamen of the offenses

for which Ochoa-Lara was prosecuted are the unauthorized uses of another person's Social Security number. There is nothing in the IRCA or its express preemption language that remotely suggests that Congress intended to supersede Kansas' historic police power to prosecute identity thieves.

Further, as the district court noted, neither the I-9 form nor the documents appended to the I-9 form were used to prosecute Ochoa-Lara. There is nothing in the preemption language that prohibits the State from proving identity theft by using information from sources other than the I-9 form, even though that information may also be contained on the I-9 form and the documents appended thereto. See *Whiting*, 131 S. Ct. at 1982 n.9. At the end of the day, while Ochoa-Lara's use of another's Social Security number may have resulted in a falsified I-9 form or a falsified W-4 form, he was not prosecuted in this case for falsifying federal forms. As such, whether federal penalties exist for falsifying an I-9 form or a W-4 form does not prevent the State from prosecuting Ochoa-Lara for identity theft.

This case was tried to the district court on stipulated facts. The evidence supporting Ochoa-Lara's convictions was his stipulation that he used the Social Security number of another person to complete a W-4 form in order to gain employment. Given this stipulation, the State did not have to admit any documents at all to prove the elements necessary to convict Ochoa-Lara for violating the current and former Kansas identity theft statutes, much less the I-9 form and the documents appended thereto. Again, just because Ochoa-Lara used the Social Security number of another person in connection with the completion of the I-9 form does not mean that he gets the proverbial "Get Out of Jail Free" card for other illegal uses of that Social Security number that violate Kansas statutes.

The same conclusion was reached by the Minnesota Court of Appeals in *Reynua*, 807 N.W.2d. 473. That case involved, among other things, a prosecution for forgery

based on the use of a Minnesota identification card. The court in that case concluded that the preemption language in 8 U.S.C. § 1324a(b)(5) did not bar prosecution for the display or possession of a fraudulently altered Minnesota identification card simply because that card had been presented in support of an I-9 form:

> "IRCA bars use of the I-9 form and 'any information contained in or appended to such form' for purposes other than enforcement of the federal immigration statute and the federal perjury and false-statement provisions. 8 U.S.C. § 1324a(b)(5). But we cannot read this provision so broadly as to preempt a state from enforcing its laws relating to its own identification documents.
>
> "We conclude that the state, for example, is not barred from prosecuting the crime of display or possession of a fictitious or fraudulently altered Minnesota identification card, [citation omitted], merely because that card has been presented in support of an I-9 federal employment-eligibility verification form. There is a general presumption that the 'historic police powers of the State' are not superseded by federal legislation 'unless that was the clear and manifest purpose of Congress.' *Altria Group, Inc. v. Good*, 555 U.S. 70, 129 S. Ct. 538, 543, 172 L. Ed. 2d 398 (2008) (quotation omitted).
>
> "Section 1324a(b)(5) prohibits non-federal use of 'information' appended to the I-9 form. That language does not exhibit a 'clear and manifest purpose' to bar enforcement of state laws pertaining to state identification cards. It would be a significant limitation on state powers to preempt prosecution of state laws prohibiting falsification of state-issued identification cards, let alone to prohibit all use of such cards merely because they are also used to support the federal employment-verification application. [Citations omitted.] We note here that Reynua did not use the [falsified] identification card solely to apply for employment, but also to apply for certificates of title.
>
> . . . .
>
> "The state proved the simple-forgery count by presenting evidence tending to show that the photograph on the Minnesota identification card was that of Reynua, but the card was issued in the name of 'Laura Romero.' Reynua's sister testified that the photograph was of Reynua, the district court found that the photograph was of the same person as the person in the Reynua family photographs, and the court took judicial notice that the person in all the photographs was the same person that appeared in court to

9

answer the complaint. Although the Minnesota identification card in the name of 'Laura Romero' was presented with the I-9 form, the state's proof of the falsity of the identification card did not rely on its use in support of the I-9 form. The falsity of the identification card was shown primarily by the evidence establishing that the person whose photograph was shown on the card was Reynua, not Romero." 807 N.W.2d at 480-81.

Various other panels of our court in unpublished decisions have likewise held that the IRCA does not preempt state prosecution of identity theft based on the unlawful use of another's Social Security number. See *State v. Saldana*, No. 111,429, 2015 WL 4486779 (Kan. App. 2015) (unpublished opinion), *petition for rev. filed* August 5, 2015; *State v. Dorantes*, No. 111,224, 2015 WL 4366452 (Kan. App. 2015) (unpublished opinion), *petition for rev. filed* July 23, 2015; *State v. Flores-Sanchez*, No. 110,457, 2014 WL 7565673 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. ___ (August 20, 2015); *State v. Lopez-Navarrete*, No. 111,190, 2014 WL 7566851 (Kan. App. 2014) (unpublished opinion). Those panels each reached the same conclusion as we do in this case. The State's prosecution of Ochoa-Lara for the illegal use of another's Social Security number did not depend on his immigration status, the lawfulness of his presence in the United States, or his eligibility for employment. The other panels of our court noted in those decisions, as we do here, that the possible illegal uses of another's Social Security number are myriad. There is nothing in the IRCA that suggests that Congress intended the comprehensive preemption of the police powers of the State to prosecute all such instances of identity theft. The State's prosecution of Ochoa-Lara for violations of Kansas identity theft statutes was not preempted by the IRCA.

*Did Ochoa-Lara preserve the issue of multiplicity for appellate review?*

Ochoa-Lara next argues that his convictions of two counts of identity theft violated the rule prohibiting multiplicitous convictions. Ochoa-Lara contends that the State took what was a single and continuous criminal act and separated it into multiple

counts in the amended complaint. Ochoa-Lara has not properly preserved this issue for appellate review.

As noted above, the State sought permission from the district court to split what had been a single count of identity theft into two separate charges due to the fact that the identity theft statute in Kansas had changed. At the hearing before the district court, Ochoa-Lara did not make any argument that the State's requested amendment violated the prohibition against multiplicitous counts, nor did he make any effort to raise the issue with the district court thereafter.

It is well settled that "constitutional grounds for reversal asserted for the first time on appeal are not properly preserved for appellate review." *State v. Guadina*, 284 Kan. 354, 372, 160 P.3d 854 (2007). This rule is subject to three recognized exceptions: (1) The newly asserted issue involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the issue is necessary to serve the ends of justice or prevent a denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite relying on the wrong ground or assigning the wrong reason for its decision. *State v. Gomez*, 290 Kan. 858, 862, 235 P.3d 1203 (2010).

A party who wishes to raise a constitutional issue for the first time on appeal must proactively invoke an exception and argue why the issue is properly before the appellate court. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). Kansas Supreme Court Rule 6.02(a)(5) (2014 Kan. Ct. R. Annot. 41) states that the contents of an appellant's brief must include:

> "The arguments and authorities relied on, separated by issue if there is more than one. Each issue must begin with citation to the appropriate standard of appellate review and a pinpoint reference to the *location* in the record on appeal where the issue was raised and

11

ruled on. *If the issue was not raised below, there must be an explanation why the issue is properly before the court*." (Emphasis added.)

Recently in *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), our Supreme Court warned litigants that the failure to comply with Rule 6.02(a)(5) risks having issues deemed waived or abandoned. The court in *Godfrey* noted that "[w]e are now sufficiently post-*Williams* that litigants have no excuse for noncompliance with Rule 6.02(a)(5)." *Godfrey*, 300 Kan. at 1044.

In this case, Ochoa-Lara raises the issue of multiplicity for the first time in his appellate brief, but he makes no effort to articulate any of the exceptions that would allow us to consider this issue for the first time on appeal. The State, in its brief, argues that this issue has not been appropriately preserved for appellate review. Nevertheless, Ochoa-Lara chose not to submit a reply brief to respond to the State's preservation argument. Ochoa-Lara's brief does not comply with Rule 6.02(a)(5). Because Ochoa-Lara failed to raise the issue of multiplicity with the district court and because he failed to articulate in his brief any exception that would permit us to review the issue for the first time on appeal, we choose not to reach the merits of this issue as it has been abandoned by Ochoa-Lara's failure to properly brief it.

Affirmed.