NOT DESIGNATED FOR PUBLICATION

No. 115,423

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANGEL HERNANDEZ-AVILES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; SARA WELCH, judge. Opinion filed July 28, 2017. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., POWELL and GARDNER, JJ.

*Per Curiam*: In this direct appeal, Angel Hernandez-Aviles contends that several trial errors denied him a fair trial, leading to his convictions of identity theft and making a false information. Finding no errors, we affirm.

*Factual and procedural background*

On November 20, 2013, Jose Cordero interviewed Hernandez-Aviles for employment at the restaurant Mi Ranchito. After filling out paperwork, including a W-4 tax form, Hernandez-Aviles was hired by Cordero as a busboy and began working the

1

same day. Cordero claimed that Hernandez-Aviles' employment at Mi Ranchito was terminated because Hernandez-Aviles had failed to provide additional information to his employer. However, Hernandez-Aviles claims that his employment was terminated because he had previously worked at a different Mi Ranchito location at which he had been terminated. Hernandez-Aviles worked at the second Mi Ranchito location for 1 day.

On December 4, 2013, a TJ Maxx employee detained Hernandez-Aviles for suspected shoplifting. The Overland Park police who responded found a social security card in Hernandez-Aviles' possession. The social security information that Hernandez-Aviles had used to fill out paperwork at Mi Ranchito was the same as the social security information found on the social security card in his possession at TJ Maxx. After contacting social security, the Overland Park police department verified that the social security number used by Hernandez-Aviles had been issued to a different person.

Hernandez-Aviles was prosecuted for one count of identity theft and one count of making a false information. At trial, Hernandez-Aviles testified that a friend had given him the social security card, that he knew the social security card was fake, and that he knew he needed a social security number to get a job. Hernandez-Aviles admitted that the handwriting on the Mi Ranchito paperwork looked like his handwriting. Although Hernandez-Aviles did not specifically remember signing the Mi Ranchito paperwork, he admitted that the signature on the Mi Ranchito paperwork was his.

During closing arguments, the State focused on the fact that Hernandez-Aviles admitted using another person's social security information and argued that Hernandez-Aviles intended to defraud Mi Ranchito. In response, Hernandez-Aviles suggested that he could not have intended to defraud Mi Ranchito because it was obvious that he was an illegal alien and Mi Ranchito was indifferent to obvious warning signs. Hernandez-Aviles contended that the social security card was obviously fake, that a Mi Ranchito employee had to help him fill out forms, and that Mi Ranchito's failure to verify his identity

2

suggested Mi Ranchito knew his social security information was false. Hernandez-Aviles suggested that since Mi Ranchito was complicit in using false social security information, it was impossible for him to have intended for Mi Ranchito to detrimentally rely upon his representations. During rebuttal, the State argued that detrimental reliance on the part of Mi Ranchito was unnecessary and that no evidence showed Mi Ranchito was willing to collude with Hernandez-Aviles for the purposes of using fraudulent social security information in the hiring process.

The jury instructions for identity theft and making a false complaint required the jury to find that Hernandez-Aviles had an intent to defraud. The jury instructions defined intent to defraud as "an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property." Furthermore, the jury instruction for identity theft defined "personal identifying information" to include a "social security number or card" for purposes of identity theft. Neither party objected to the jury instructions submitted to the jury or requested that additional instructions be submitted to the jury.

The jury found Hernandez-Aviles guilty of identity theft and of making a false information. The district court denied Hernandez-Aviles' motion for a new trial and his motion for a departure sentence. The district court sentenced Hernandez-Aviles to an 18-month probation period with a 7-month underlying sentence for identity theft and a 7-month underlying sentence for making a false information. The district court ordered the sentences to run concurrently. Hernandez-Aviles timely appealed, raising several issues.

*Did the State commit prosecutorial error by misstating the law during closing arguments?*

Hernandez-Aviles first contends that the State deprived him of his constitutional right to a fair trial by misstating the law during closing arguments. Hernandez-Aviles asserts that the "intent to deceive" element of identity theft and making a false information requires actual reliance on such deception, so the State erred by telling the jury during closing arguments that reliance was unnecessary. He contends that the State effectively eliminated a necessary element from the crimes of identity theft and making a false information.

"'The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment.' [Citations omitted.]" *State v. Sherman*, 305 Kan. 88, 98, 378 P.3d 1060 (2016). To determine whether a criminal defendant has been denied the right to a fair trial in these circumstances, we use the prosecutorial error analysis. See 305 Kan. at 107. Under this analysis, we determine if the prosecutor erred and then consider whether that error prejudiced the criminal defendant. 305 Kan. at 109. A prosecutorial error occurs when the "prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." 305 Kan. at 109.

When analyzing constitutional prosecutorial error, we evaluate prejudice by using the traditional constitutional harmlessness inquiry. *Sherman*, 305 Kan. at 109. A constitutional prosecutorial error is harmless if the State demonstrates, beyond a reasonable doubt, that the error did not affect the outcome of the trial. 305 Kan. at 109. Stated differently, a constitutional prosecutorial error is harmless if "'there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted]." 305 Kan. at 109.

To be convicted for the crimes of identity theft or making false information, the accused must act with an "intent to defraud." K.S.A. 2016 Supp. 21-6107(a); K.S.A. 2016 Supp. 21-5824(a). "Intent to defraud" is defined as "an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property." K.S.A. 2016 Supp. 21-5111(o). A victim need not suffer actual economic loss for the crime of identity theft to be complete. *State v. Oswald*, 36 Kan. App. 2d 144, 148, 137 P.3d 1066 (2006). See K.S.A. 2016 Supp. 21-6107(a)(1).

Our recent cases have consistently held that knowingly using false social security information for the purpose of obtaining employment or other benefits satisfies the intent to defraud element of identity fraud. See *State v. Meza*, 38 Kan. App. 2d 245, 248-49, 165 P.3d 298 (2007); *Oswald*, 36 Kan. App. 2d at 148-50 (2006); *State v. Morales*, No. 111,904, 2016 WL 97848, at *2-4 (Kan. App. 2016) (unpublished opinion), *rev. granted* October 21, 2016. For example, in *State v Garcia*, No. 112,502, 2016 WL 368054, at *1-2 (Kan. App. 2016) (unpublished opinion), *rev. granted* October 21, 2016, Garcia used another person's social security information to fill out a W-4 form to obtain employment and Garcia was employed for only 1 day. 2016 WL 368054, at *1-2. The *Garcia* court reasoned that Garcia's conduct satisfied the intent to defraud element because he induced his employer to rely on false social security information and received benefits of employment including employee benefits, workers compensation benefits, and unemployment benefits. 2016 WL 368054, at *2-3.

During closing arguments, the State discussed the intent to defraud element and argued that "[t]here is nothing in [the] elements that say Mi Ranchito has to rely on the defendant's actions, that it has to be a reliance." We agree. "Intention" is defined as: "The willingness to bring about something planned or foreseen; the quality, state, or condition of being set to do something." Black's Law Dictionary 931 (10th ed. 2014); K.S.A. 2016 Supp. 21-5111(o). Courts need not resort to statutory interpretation when, as here, the

wording of a statute is plain and unambiguous; common words are given their ordinary meaning. See *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). A plain reading of the statute shows that Hernandez-Aviles needed only the intent to deceive and the intent to induce Mi Ranchito to rely on his deceitful conduct. Because actual reliance is not necessary to satisfy the statutory elements or specifically the element of intent to defraud, the State did not misstate the law. As a result, we find it unnecessary to consider whether Hernandez-Aviles was prejudiced. See *Sherman*, 305 Kan. at 109.

*Are the Kansas identity theft or making a false information statutes preempted?*

Hernandez-Aviles next contends that the Immigration Reform and Control Act (IRCA) preempts identity theft crimes when individuals obtain employment by using fraudulent federal documents. He acknowledges that this court has previously held to the contrary, but contends that those cases are erroneous and should be overturned. Hernandez-Aviles asserts that the IRCA expressly preempts Kansas law by prohibiting the use of I-9 forms in State prosecutions, that the policy behind the IRCA is to punish employers that hire aliens who are ineligible to work and not to punish aliens seeking unauthorized work, and that prosecuting aliens by using information provided to complete an I-9 form conflicts with the policy rationale behind the IRCA.

"Under the Supremacy Clause of the United States Constitution, 'the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'" *State v. Ochoa-Lara*, 52 Kan. App. 2d 86, 89, 362 P.3d 606 (2015) (quoting U.S. Const. Art. VI, cl. 2), *rev. granted* October 21, 2016. State laws in conflict with federal law are invalidated by the Supremacy Clause. *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 294, 255 P.3d 1186 (2011). "Preemption is a question of law over which [an appellate court] exercises de novo review." 292 Kan. at 294.

This court has consistently held that the IRCA does not preempt enforcement of the Kansas identity theft statute when illegal aliens use another person's social security information to obtain employment. See, *e.g.*, *Ochoa-Lara*, 52 Kan. App. 2d at 93-94; *State v. Jasso-Mendoza*, No. 113,237, 2017 WL 2001347, at *9 (Kan. App. 2017) (unpublished opinion); *State v. Hernandez-Manrique*, No. 110,950, 2016 WL 5853078, at *9 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* October 24, 2016; *Garcia*, 2016 WL 368054, at *4-5. We note that the Kansas Supreme Court has accepted petitions for review in a number of our cases addressing this issue. See, *e.g.*, *Ochoa-Lara*, 52 Kan. App. 2d 86; *Morales*, 2016 WL 97848; *Garcia*, 2016 WL 368054.

The IRCA is federal law which governs the unlawful employment of aliens. *Ochoa-Lara*, 52 Kan. App. 2d at 90. We agree with *Ochoa-Lara*'s reasoning that a state prosecution of an individual for the use of another person's social security information has nothing to do with the IRCA or immigration and that Kansas identity theft statutes are not preempted by the IRCA. 52 Kan. App. 2d at 93-94.

The same reasoning applies to the crime of making a false information. Furthermore, the Kansas identity theft statute is a law of general application and makes no distinction between aliens and citizens. Finding that the IRCA preempts criminal statutes that apply to the public at large would lead to an absurd result because aliens would be immune from committing certain crimes but citizens who engage in the same conduct would be subject to criminal prosecution. W-4 forms may be used to prosecute aliens because the purpose of a W-4 form is unrelated to the IRCA.

Hernandez-Aviles may be correct in asserting that the IRCA preempts the use of an I-9 form in State prosecutions. See 8 U.S.C. § 1324a(b)(5) (2012); *Ochoa-Lara*, 52 Kan. App. 2d at 92-93; *Hernandez-Manrique*, 2016 WL 5853078, at *9. But no I-9 was admitted in this case. Neither the complaint nor the amended complaint mentions an I-9 form. The only reference to an I-9 was by Hernandez-Aviles. While cross-examining a

7

witness, Hernandez-Aviles' attorney questioned a Mi Ranchito employee about the I-9 form. When Hernandez-Aviles attempted to introduce that form into evidence, the State objected because "I-9s are inadmissible in State prosecutions." Eventually, the district court agreed with the State and sustained its objection. Nonetheless, Hernandez-Aviles' counsel mentioned the I-9 form during closing arguments. The record thus shows that the State actively attempted to prevent admission of the I-9 form and did not use the I-9 form in any way to prove its case. We find no error by the State's handling of the I-9 form, despite Hernandez-Aviles' attempt to inject error into the proceeding.

*Is Hernandez-Aviles barred from challenging the jury instruction under the doctrine of invited error?*

Hernandez-Aviles next contends that the district court erred in giving a jury instruction that defined personal identifying information as including a social security number or card. The State argues that doctrine of invited error precludes Hernandez-Aviles from challenging the jury instruction because Hernandez-Aviles requested the language in the jury instruction and did not object to it at the instruction conference.

"Whether the doctrine of invited error applies presents a question of law, and appellate courts generally exercise unlimited review over questions of law." *State v. Hankins*, 304 Kan. 226, 230, 372 P.3d 1124 (2016). Under the doctrine of invited error, a criminal defendant cannot challenge a jury instruction on appeal when the criminal defendant agrees to the instruction on the record and at trial. *State v. Peppers*, 294 Kan. 377, 393, 276 P.3d 148 (2012). See K.S.A. 22-3414(3).

Hernandez-Aviles' proposed jury instructions included PIK Crim. 4th 61.050, which defines "personal identifying information" as including social security cards and numbers, as well as many other items:

"'Personal identifying information' includes, but is not limited to, the following: name; birth date; address; telephone number; drivers license number or card or non-drivers identification number or card; social security number or card; place of employment; employee identification numbers or other personal identification numbers or cards; mother's maiden name; birth, death or marriage certificates; electronic signatures; and any financial number, or password that can be used to access a person's financial resources, including, but not limited to, checking or savings accounts, credit or debit card information, demand deposit or medical information."

During the jury instruction conference, the district court suggested modifying this instruction by omitting the irrelevant examples and including only "social security number or card." Accordingly, the jury instruction as given stated only that "'Personal identifying information' includes a social security number or card." It is uncontested that the only personal identifying information at issue was the social security information that Hernandez-Aviles had used to apply for employment.

The State and Hernandez-Aviles agreed to the modification, each stating that the modification was "fine." When asked if there were any objections to the jury instructions as written, Hernandez-Aviles' counsel said:  "Looks good to me, Judge."

Because Hernandez-Aviles suggested the pattern jury instruction and agreed to modify it as the district court suggested, he is barred from challenging the jury instruction at issue. See *Peppers*, 294 Kan. at 393.

*Did the district court violate Hernandez-Aviles' constitutional right to a jury trial by instructing the jury that a social security card was "personal identifying information?"*

Hernandez-Aviles argues that the district court invaded the jury's fact-finding function by issuing a jury instruction stating that Hernandez-Aviles "used personal identifying information because he used a social security card." But the jury instruction

9

challenged is the same as the jury instruction addressed above, which contains no direction from the court that anyone *used* a social security card or number. Hernandez-Aviles contends the court determined that an essential element of identity theft was met as a matter of law, but he acknowledges Kansas Supreme Court precedent to the contrary.

K.S.A. 2016 Supp. 21-6107(e)(2)(F) defines "personal identifying information" as including a "social security number or card." The language of the jury instruction was taken directly from that statute. The role of the jury is to determine the facts and apply the law to the facts in reaching a decision. *State v. Sisson*, 302 Kan. 123, 130, 351 P.3d 1235 (2015). Accordingly, the district court invades the province of the jury when it determines the facts. 302 Kan. at 130.

When considering a similar issue, the Kansas Supreme Court articulated the applicable test:

> "When determining whether an instruction was clearly erroneous, the appellate court first determines whether there was any error at all. In making that determination, the appellate court must consider whether the subject instruction was legally and factually appropriate, employing an unlimited review of the entire record. If the appellate court determines that the district court erred in giving a challenged instruction, then the analysis moves to a reversibility inquiry, wherein the court assesses whether it is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred. The party claiming a clearly erroneous instruction maintains the burden of establishing the degree of prejudice necessary for reversal. *State v. Williams*, 295 Kan. 506, Syl. ¶¶ 4, 5, 286 P.3d 195 (2012)." *Sisson*, 302 Kan. at 129.

In *Sisson*, Sisson argued that the jury instruction invaded the jury's fact-finding province because the jury instruction defined "scales" to be illegal drug paraphernalia and prevented the jury from making the factual determination. 302 Kan. at 129. The Kansas Supreme Court held that the jury instruction accurately stated the law and that the jury

10

still needed to determine whether the scales were predominately used for distributing drugs. 302 Kan. at 132. As a result, the district court did not invade the fact-finding province of the jury by providing the legal definition of drug paraphernalia. 302 Kan. at 132.

The issue before us is identical to the issue in *Sisson*. The jury instruction accurately defined personal identifying information to include a social security card or number as listed by K.S.A. 2016 Supp. 21-6107(e)(2)(F). The jury still had to make the factual determination that Hernandez-Aviles used social security information belonging to another person with the intent to defraud. K.S.A. 2016 Supp. 21-6107(a)(1). Because the district court merely instructed the jury on the legal definition of personal identifying information, the district court did not invade the province of the jury.

Affirmed.