NOT DESIGNATED FOR PUBLICATION

No. 122,840

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CARLOS RIVERA-RODRIGUEZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed June 11, 2021. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., SCHROEDER, J., and WALKER, S.J.

PER CURIAM: A jury convicted Carlos Rivera-Rodriguez of two counts of identity theft and one count of making false information stemming from two separate traffic stops. During the stops, Rivera-Rodriguez showed police officers a driver's license that had the name and information of Juan Martinez, and the police officers issued citations to Martinez based on the license information. It was later discovered that Martinez was a resident of Iowa and had been having problems with someone from the Wichita area using his name and identification for many years. On appeal, Rivera-Rodriguez argues there was insufficient evidence to convict him of all three charges. Specifically, he claims

1

the evidence is insufficient to affirm his identity theft convictions because he did not receive a benefit from the theft, which is a required element of the crime. Rivera-Rodriguez also claims the evidence was insufficient to convict him of the making false information charge because he did not cause the traffic citation to be made, which is an element of the crime. After carefully reviewing the evidence and the arguments of the parties, we find that Rivera-Rodriguez did act with the intent to receive a benefit from identity theft. We also construe his actions as causing the traffic citation to be made by the officer who stopped him. Accordingly, we affirm his convictions for identity theft and making false information.

FACTS

Martinez has lived in Des Moines, Iowa, for approximately 39 years. At no point has he lived in Kansas or had a Kansas driver's license. But around 2006, he started having problems with his identity information. That year, the Internal Revenue Service (IRS) audited him because it believed he owed taxes for various jobs he worked in Wichita, even though Martinez never worked in Wichita. After speaking with the IRS, Martinez resolved the audit, and the IRS gave him a special code to identify himself when he filed his taxes.

That same year, Martinez attempted to renew his Iowa driver's license, but the Iowa Department of Motor Vehicles would not renew it because someone obtained a driver's license in Kansas under his name. To correct this, he had to drive to Wichita and appear in court to show that the person who obtained the license was not him. Martinez never figured out the identity of the person in Wichita who obtained a license in his name.

At some point, Martinez also began receiving bills for auto loans and rent for apartments in Wichita. He again resolved those problems by calling the businesses and

2

telling them he had been the victim of identity theft. Around 2015 or 2016, Martinez bought a subscription to LifeLock, an identity theft protection company, and TransUnion, a consumer credit reporting agency, to prevent further problems. In 2016, LifeLock alerted Martinez that someone applied to open an account to receive water services in his name, again in Wichita. Martinez then called the water company and told them not to open the account. Martinez' wife also called and made a police report with both the Wichita and Des Moines Police Departments after the incident. Wichita Police Detective Steve Pennington was the person who spoke with Martinez' wife about the issue with the water services.

In January 2019, Wichita Police Officer Kevin Zoerb pulled over Rivera-Rodriguez for driving with an expired license plate. When Zoerb asked for his driver's license and proof of insurance, Rivera-Rodriguez handed him a Kansas driver's license with the name Juan Ramone Martinez on it. Zoerb ended up issuing a citation for the expired tag and no proof of insurance to Rivera-Rodriguez, though Zoerb believed he was issuing the ticket to Martinez based on the license information. At no point during their interaction did Rivera-Rodriguez ever reveal to Zoerb that the name on the driver's license was not his actual identity.

Later in January, Pennington again spoke with Martinez' wife. She told Pennington that someone from the Andover Police Department contacted her about an abandoned car registered to Martinez. Pennington tried to locate Rivera-Rodriguez, who was posing as Martinez, by going to his listed address, his place of employment, and calling the phone numbers he had, but he was unsuccessful. Pennington then issued an attempt to locate for "the local Juan Martinez."

The following month, Wichita Police Officer Casey Weidner pulled over Rivera-Rodriguez once again for an expired license plate. Rivera-Rodriguez told Weidner he knew his tag was expired and showed Weidner the citation Officer Zoerb previously

3

issued. Rivera-Rodriguez also handed Weidner the same driver's license he handed Zoerb, which displayed Martinez' name. Weidner originally planned to issue Rivera-Rodriguez another citation for an expired license plate like Zoerb had issued to him. However, after running the driver's license information through a police program called SPIDER, Weidner discovered that there was an active attempt to locate on the driver's license, and Weidner subsequently transported Rivera-Rodriguez to be interviewed by Pennington. Just as in his encounter with Zoerb, Rivera-Rodriguez never told Weidner that the information on the driver's license did not belong to him.

A few days later, the State charged Rivera-Rodriguez with two counts of identity theft and one count of making false information.

In addition to the testimony summarized above, at the jury trial Martinez testified that he did not know Rivera-Rodriguez, nor did he ever give him permission to pretend to be him, use his identity, or use his date of birth. Since Martinez did not know Rivera-Rodriguez, he could not identify him in the courtroom. However, Officers Zoerb and Weidner both identified Rivera-Rodriguez as the person they had pulled over for an expired license plate.

The State also called Immigration and Customs Enforcement Agent Doug Thompson to testify. Thompson testified that he had previously spoken with Rivera-Rodriguez, who identified himself by that name, after Rivera-Rodriguez was taken into custody in this case. Thompson said he spoke with Rivera-Rodriguez because someone from the Wichita Police Department had contacted him about a potential immigration violation. Thompson also identified Rivera-Rodriguez in court during trial. After the State rested its case, Rivera-Rodriguez did not testify or present any evidence.

At the conclusion of the trial, the jury found Rivera-Rodriguez guilty of all three charges. At sentencing, the district court found that Rivera-Rodriguez had a criminal

history score of I and sentenced him to 18 months' probation with an underlying controlling sentence of 18 months' imprisonment.

Rivera-Rodriguez has timely appealed from his convictions and sentences.

ANALYSIS

*Sufficiency of the evidence of identity theft*

As his first issue on appeal, Rivera-Rodriguez argues the State did not present sufficient evidence to convict him of identity theft.

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

When we are required to interpret statutes, the inquiries are questions of law over which we have unlimited review. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019).

Here, the jury convicted Rivera-Rodriguez of two counts of identity theft. That statute criminalizes "possessing" or "using . . . any personal identifying information, or document containing the same, belonging to or issued to another person with the intent to . . . [d]efraud that person, or anyone else, in order to receive any benefit." K.S.A. 2020 Supp. 21-6107(a)(1). Personal identifying information includes:  a person's name and birth date. K.S.A. 2020 Supp. 21-6107(e)(2)(A), (e)(2)(B).

5

During closing argument, the State argued:

"And what is his benefit? His benefit is that it's not so much that he gets money or property or enriches himself, the benefit is he conceals himself. The benefit is he avoids responsibility. That ultimately, this citation, this traffic stop will back bounce and hit the real Juan Martinez, while he avoids the consequences of it. The benefit is that he hides who he really is. That's the benefit."

Rivera-Rodriguez argues the evidence presented at trial was insufficient to convict him of identity theft because the State did not prove "that [he] acted in order to receive a benefit." Specifically, Rivera-Rodriguez "asserts that the 'benefit' needed to prove the crime of identity theft cannot, as a matter of law, be that he concealed himself or hid who he really was."

In response, the State argues that concealment does qualify as a benefit under K.S.A. 2020 Supp. 21-6107(a)(1) because only a different subsection, K.S.A. 2020 Supp. 21-6107(a)(2), requires that the State prove that Rivera-Rodriguez obtained a monetary benefit. Alternatively, the State argues that the jury was not bound by the prosecutor's argument concerning the benefit Rivera-Rodriguez intended to or did receive. Because of this, the State claims that the jury "could have concluded that [Rivera-Rodriguez] possessed Juan R. Martinez's personal identifying information with the intent to defraud the real Juan R. Martinez and obtain the benefit of avoiding immigration consequences, up to and including deportation."

The parties' lack of agreement concerning what constitutes a benefit can presumably be explained, at least in part, by the legislative history of the identity theft statute. In *State v. Meza*, 38 Kan. App. 2d 245, 248, 165 P.3d 298 (2007), which Rivera-Rodriguez cites to support his contention that the benefit someone derives from identity theft is usually monetary or economic, a panel of our court found that the statute was satisfied if the defendant, "for her own economic benefit, used [someone else's] social

6

security number knowingly and with the intent to defraud [the employer] by inducing it to create for her a right with respect to property." See also *State v. Johnson*, 40 Kan. App. 2d 196, 204, 190 P.3d 995 (2008) (reaffirming that identity theft "does not require proof of economic loss to the victim but only proof of the defendant's intent to defraud for his or her own economic benefit").

But Rivera-Rodriguez' reliance on *Meza* is misplaced. Both *Johnson* and *Meza* were decided under the previous version of the identity theft statute. 40 Kan. App. 2d at 203; 38 Kan. App. 2d at 247-48. At that time the earlier statute, K.S.A. 21-4018(a), defined identity theft as "knowingly and with intent to defraud *for economic benefit*, obtaining, possessing, transferring, using or attempting to obtain, possess, transfer or use, one or more identification documents or personal identification number of another person other than that issued lawfully for the use of the possessor." (Emphasis added.) In 2005, the Legislature replaced the "for economic benefit" language with "for any benefit." L. 2005, ch. 131, § 2.

In doing so, "the legislature expanded the definition of 'identity theft' to criminalize *every* conceivable motive for stealing another's identity. . . . In short, the deletion of the phrase 'for economic benefit' and the insertion of the phrase 'for any benefit' significantly changed and expanded the context of the identity theft statute." *State v. Capps*, No. 105,653, 2012 WL 5973917, at *3 (Kan. App. 2012) (unpublished opinion).

Though the previous version of the statute was repealed pursuant to the 2011 recodification of the Kansas Criminal Code and recodified to its current designation as K.S.A. 2020 Supp. 21-6107, our court's analysis of the specific language at issue is persuasive. In a case remarkably similar to our own, *State v. Martinez-Perez*, No. 109,383, 2014 WL 2401660, at *1-2 (Kan. App. 2014) (unpublished opinion), our court relied on its decision in *Capps* to uphold the defendant's conviction for identity theft

7

under K.S.A. 2013 Supp. 21-6017 after the defendant gave a police officer a driver's license that contained another individual's information. There, this court stated:

"[Capps'] conviction was affirmed because the [identity theft] statute no longer required a showing of an intent to receive an economic benefit; any benefit will do.

"Relying on *Johnson*, Martinez–Perez argues that mere possession of another's personal information did not demonstrate an intent to defraud. But [Martinez-Perez] ignores the fact that he did not merely possess the fake driver's license. To the contrary, he offered it to the officer and claimed it was his. He explicitly misidentified himself as Francisco Sotelo. The State presented sufficient evidence that Martinez–Perez intended to defraud the officer by leading him to believe that he was Francisco Sotelo so that he would not suffer the consequences of being found to have a previous DUI conviction and being found to be in this country illegally. [Citations omitted.]" 2014 WL 2401660, at *2.

Again, the current version of the statute under which Rivera-Rodriguez was convicted criminalizes "possessing" or "using . . . any personal identifying information, or document containing the same, belonging to or issued to another person with the intent to . . . [d]efraud that person, or anyone else, in order to receive any benefit." K.S.A. 2020 Supp. 21-6107(a)(1).

Unlike the defendants in *Capps* and *Martinez-Perez*, Rivera-Rodriguez does not dispute whether he had the "intent to defraud" under K.S.A. 2020 Supp. 21-6107(a)(1), but the respective panels' analyses in those cases demonstrate that a conviction for identity theft can be upheld if a defendant acts with the intention to receive any benefit, not merely a monetary or economic one. More importantly for our case, *Martinez-Perez* held that concealing one's identity so that an individual would not be found to be in this country illegally qualified as a benefit under the identity theft statute. 2014 WL 2401660, at *2. Therefore, even though Officer Weidner did not issue Rivera-Rodriguez a citation during the February 2019 traffic stop, Rivera-Rodriguez still intended to receive a benefit by concealing the nature of his immigration status, which he later revealed to Thompson.

8

Looking at the evidence in the light most favorable to the prosecution, the State presented sufficient evidence that Rivera-Rodriguez acted with the intent to receive a benefit by presenting both Zoerb and Weidner with a driver's license containing Martinez' information. Accordingly, the State presented sufficient evidence to support Rivera-Rodriguez' convictions for identity theft. We affirm those convictions.

*Sufficiency of the evidence of making false information*

Rivera-Rodriguez next claims there was insufficient evidence to convict him of making false information. His argument is predicated on statutory interpretation of K.S.A. 2020 Supp. 21-5824(a), the making false information statute. Since his claim requires us to interpret the statute, it is once again a question of law over which we have unlimited review. See *Alvarez*, 309 Kan. at 205. Once we have completed that analysis, we must again review the sufficiency of the evidence, and the standard of review is the same as that set out above with regard to identity theft.

Here, the jury convicted Rivera-Rodriguez of making false information. The statute states:

> "Making false information is making, generating, distributing or drawing, or causing to be made, generated, distributed or drawn, any written instrument, electronic data or entry in a book of account with knowledge that such information falsely states or represents some material matter or is not what it purports to be, and with intent to defraud, obstruct the detection of a theft or felony offense or induce official action." K.S.A. 2020 Supp. 21-5824(a).

The jury instructions stated that the State had to prove: (1) Rivera-Rodriguez "caused to be made a written Instrument"; (2) Rivera-Rodriguez "knew that such information falsely stated or represented some material matter"; (3) Rivera-Rodriguez

9

"intended to defraud"; and (4) that the "act occurred on or about the 9th day of January, 2019, in Sedgwick County, Kansas."

The complaint states that the charge of making false information was based upon the citation Officer Zoerb issued for driving with an expired license tag. Rivera-Rodriguez claims the evidence is insufficient because he did not cause the traffic citation issued by Zoerb to be made. To support his argument, he cites to *State v. Ward*, 307 Kan. 245, 408 P.3d 954 (2018).

In *Ward*, a jury convicted the defendant of theft by deception and making false information after he altered the payee line of a check someone wrote payable to his construction business so that he could deposit the money in his personal account. Regarding his conviction for making false information, Ward argued that adding his name to the payee line of the check did not constitute making false information. In deciding the case, our Supreme Court examined the term "make" in the context of the statute and utilized Black's Law Dictionary to construe "make" as either to "to cause (something) to exist," "to enact (something)," "to acquire (something)," or "to legally perform, as by executing, signing, or delivering (a document)." 307 Kan. at 260 (quoting Black's Law Dictionary 1099 [10th ed. 2014]). Our Supreme Court then reversed Ward's conviction, reasoning that he did not make the check under any of the definitions recognized in Black's. 307 Kan. at 260.

The State argues that *Ward* is of limited use here because Ward was charged with "making" a written instrument, whereas Rivera-Rodriguez is charged with "causing to be made" a written instrument. See 307 Kan. at 259-60. "Thus, unlike *Ward*, the meaning of make is not of central importance. Instead the focus here is on 'causing.'" The State goes on to argue that Rivera-Rodriguez caused Officer Zoerb to issue the traffic citation.

10

"Causation in a criminal case has two core elements: cause-in-fact and legal causation. Cause-in-fact requires proof that but for the defendant's conduct, the result would not have occurred. Legal causation limits a defendant's liability to the reasonably foreseeable consequences of his or her conduct." *State v. Wilson*, 308 Kan. 516, 522, 421 P.3d 742 (2018). Taken together, these elements are commonly referred to as "'proximate cause.'" 308 Kan. at 522.

Rivera-Rodriguez argues that he was not the cause of the citation because Zoerb had discretion to issue Rivera-Rodriguez a ticket. See *Rodriguez v. United States*, 575 U.S. 348, 355, 135 S. Ct. 1609, 191 L. Ed. 2d 842 (2015) (holding that part of police officer's mission includes determining whether to issue traffic citation); K.S.A. 2020 Supp. 8-2106(a). In appellant's brief, Rivera-Rodriguez' counsel contends that "[b]ecause [Rivera-Rodriguez] had no say as to whether a ticket would be issued, there is no way that he could have 'caused to be made' the ticket." However, Rivera-Rodriguez does not distinguish between cause-in-fact or legal causation in his analysis; he simply asserts he did not cause the traffic citation to be made.

Here, the cause-in-fact inquiry is easily satisfied. Had Rivera-Rodriguez not driven with an expired license plate and no proof of insurance, Officer Zoerb never would have issued him the citations for these violations. Additionally, had Rivera-Rodriguez notified Zoerb that his driver's license was not his own, the citation would not have contained false information because it would have been issued to Rivera-Rodriguez instead of Martinez.

The remaining inquiry is whether Rivera-Rodriguez' actions provided the legal causation of the citations.

"Legal cause limits the defendant's liability even when his or her conduct was the cause-in-fact of a result by requiring that the defendant is only liable when it was

foreseeable that the defendant's conduct might have created a risk of harm and the result of that conduct and any contributing causes were foreseeable. When causation is based on a chain of events, an intervening cause may absolve the defendant of liability. However, '[i]f the intervening cause is foreseen or might reasonably have been foreseen' by the defendant, his or her conduct may still be considered to have proximately caused the result." *State v. Arnett*, 307 Kan. 648, 655, 413 P.3d 787 (2018) (quoting *Puckett v. Mt. Carmel Regional Med. Center*, 290 Kan. 406, 421, 228 P.3d 1048 [2010]).

The State contends that Officer Zoerb's ability to exercise discretion and issue a traffic citation could be characterized as an intervening cause, but Rivera-Rodriguez should still be held liable for his conduct because the results of his actions were foreseeable.

Officer Zoerb clearly had discretion to issue Rivera-Rodriguez a traffic citation because he pulled Rivera-Rodriguez over for an expired license plate, which is a misdemeanor under Wichita Municipal Code § 11.38.300. See K.S.A. 2020 Supp. 8-142; K.S.A. 2020 Supp. 8-2106(a). However, Rivera-Rodriguez set the chain of events in motion because he drove with an expired license plate and no proof of insurance. He also had the opportunity to notify Zoerb that his driver's license was not his own, which he failed to do. This resulted in him receiving a citation that contained false information because it was issued to Martinez instead of him.

As our Supreme Court has emphasized, foreseeability is a predominant factor when assessing legal cause. See *Wilson*, 308 Kan. at 522-23; *Arnett*, 307 Kan. at 655. Receiving a citation containing false information after Rivera-Rodriguez gave Zoerb a driver's license containing information that did not belong to him is foreseeable; the facts of the case demonstrate that Rivera-Rodriguez acted to accomplish just that. He had multiple opportunities to give his correct information to Zoerb, but he instead chose not to. To complete his objective, Rivera-Rodriguez even signed the citation as Martinez.

In sum, looking at the evidence in the light most favorable to the State, it presented sufficient evidence that Rivera-Rodriguez' actions caused the false information to be made. See K.S.A. 2020 Supp. 21-5824(a); *Chandler*, 307 Kan. at 668. Accordingly, the State presented sufficient evidence to support Rivera-Rodriguez' conviction for making false information, and since Rivera-Rodriguez only challenges the sufficiency of the evidence related to the first element, he has abandoned any claims related to the other elements of the crime. See *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019) (holding that issues not adequately briefed are deemed waived or abandoned). Consequently, we affirm Rivera-Rodriguez' conviction for making false information.

Affirmed.